## CALDWELL *vs.* LEIBER.

Partners are not entitled to charge each other, or the firm of which they are members, for their services in the care and management of the business of the copartnership, unless there is a special agreement to that effect; or where such an agreement can be implied from the course of business between the copartners.

In the management of the copartnership business, each partner is attending to his own interest therein, as well as to the interest of his copartner; and the law implies no agreement to compensate either of them for their various and unequal duties and services in the management of the business of the firm. But one of the copartners may be answerable to the other for an injury which the company has sustained by his fraudulent misconduct, in violation of his duty as a partner.

Where, during the existence of the copartnership, one of the copartners received a deputation from the post master of the village in which the business of the firm was carried on, to enable him to do the business of the post office; and the office was kept at the store of the firm, where the business was done by the copartners and their clerks, and the accounts of the office were kept in the books of the company, and the monies received for postages went into the funds of the copartnership, from which funds the sums due to the general post office were also paid; *Held*, that the partner who had the deputation was not entitled to the whole profits and commissions arising from the post office business, but that they belonged to the copartnership.

A copartner is not liable for a loss occasioned by an order given by him to the clerks of the firm, in good faith, although in direct hostility to the directions which had been given by his copartner; and though the loss occurred in consequence of such contradictory order.

As a general rule, entries made in the books of the firm, during the continuance of the copartnership, are evidence for and against the different members of the firm in a subsequent adjustment of their accounts between themselves; and it lies upon the party alleging a fraud or mistake in such entries to establish it by proof.

Where, upon a bill filed for the settlement and adjustment of the accounts of a copartnership between the members of the firm, it appeared that each party had made several claims against the other, both before the commencement of the suit and during the progress thereof, which were not sustained by the decree of the court; *Held*, that neither party was entitled to the general costs of the cause as against the other.

THIS case came before the chancellor upon the separate appeals of the complainant and of the defendant, from different parts of the final decree of the vice chancellor of the fourth circuit. The object of the suit was to settle the accounts of a copartnership which had existed between the

April 2.

parties; and a reference was made to a master to take the account between them. Upon the coming in of the master's report the defendant interposed fourteen exceptions to the same; some of which exceptions were allowed and others disallowed by the vice chancellor. And a final decree was made for the payment of the balance found due to the complainant; but without costs to either party as against the other.

The complainant appealed from so much of the decree as allowed the defendant's third exception to the report, and from so much thereof as denied to the complainant his costs against the defendant. And the defendant appealed from so much thereof as disallowed his 5th, 6th, 7th, 9th, 11th and 12th exceptions to the report.

The following opinion was delivered by the vice chancellor upon the making of the decree appealed from:

WILLARD, V. C. This cause comes before me on exceptions to the master's report, made in pursuance of an order of reference after a hearing on pleadings and proofs. In order to have a correct understanding of the case, it is necessary to examine minutely the pleadings and proofs, and especially the copartnership articles under which the parties transacted their commercial business.

The bill states that the parties on the 6th April, 1829, entered into a written agreement, under their respective hands and seals, forming a copartnership as merchants for buying, selling, and exchanging all sorts of goods, wares, and merchandizes for the term of five years from that time. It sets forth at full length the articles of copartnership, the substance of which is, that the parties having experience in each other's care and fidelity, &c. have agreed upon a copartnership in carrying on the mercantile business in the village of Canajoharie, under the style and firm of Leiber & Caldwell; that the same shall continue for the period of five years, and for that purpose each party has brought into the common stock the sum of $2822,72, in money and goods; that the business of the firm shall be carried on at the store of Henry Leiber in Church-street, in Canajoharie,

aforesaid, which the said Henry leases to the said firm for $100 a year, payable semi-annually. It contains a covenant " that each party shall be just and faithful to the other in all their business, selling, accounting, reckonings, disbursements and dealing concerning the said copartnership, and shall each of them endeavor by all just care and diligence to promote the said joint trade and stock without fraud or 'deceit; that the said copartners will not, during the time aforesaid, use, exercise, or follow the said trade or business to their private advantage or benefit, and that they or either of them shall not be either directly or indirectly concerned or engaged with any other person or persons in the said trade or business in or about the said town of Canajoharie, so that the same may have a tendency in any way to injure their present establishment hereby created, excepting the store at Palatine Bridge, now occupied by H. Leiber & Co.; and also, the said Henry Leiber reserves to himself the privilege of continuing the distillery, milling and brewing business. And the said parties do also hereby covenant and agree with each other, that they shall each give their attendance to the trade and business aforesaid." It then provides that each party shall have a moiety of the interest and share a moiety of the expenses of the copartnership and losses, &c.; that proper books shall be kept, to which each party shall have access, and contains various other usual covenants in relation to the concern, not necessary to be here mentioned.

The bill further states, that the parties immediately entered upon the business of the firm; that the respective parties contributed their proportion of capital, and that they did a successful and profitable business; that at the end of the first year the parties settled their individual accounts with the firm; that on the 6th October, 1830, the parties again settled their individual accounts; that no further settlement took place between the parties, and that the copartnership continued until 26th April, 1833, when it was dissolved by mutual consent. The bill then sets forth an article in writing signed by the parties, dated 26th April, 1833, pointing out the manner in which a division of the co-

1839.

Caldwell
v.
Leiber.

partnership effects should be made, and containing some other provisions not necessary here to be noticed. The bill alleges that, after making said memorandum, the goods, notes and accounts belonging to the firm were divided, according to the terms of the memorandum, and that the complainant gave the defendant a bond of indemnity as required, against the debts of the concern, and to pay off his share thereof as agreed upon. It alleges that no settlement of the individual accounts of the respective parties with the said firm has been made since the 6th day of April, 1831, and that from that day up to the time of the dissolution, on the 26th April, 1833, the said defendant became legally indebted and still is, to the said firm, as appears by the books, &c. a statement of which is annexed to the bill, on book account, $3308,15, and on notes and due bills in the sum of $3075,20, including interest to the 3d July, 1834. The bill admits that the complainant is indebted to the firm, as also appears by the books, &c. a statement of which is annexed to the bill, on account, notes and bills, with interest to 3d July, 1834, in the sum of $2865,72, which being deducted from the defendant's indebtedness, leaves a balance of $3517,63, one half of which, viz. $1758,81, the complainant claims as due him from defendant, and he claims interest and damages by reason that defendant has used it in profitable trade. The bill then alleges that defendant has violated the covenant contained in the articles of copartnership in the following particulars, for which the complainant claims damages, viz : 1st. For not appropriating the store mentioned in the articles exclusively to the use of the firm, but on the contrary, appropriating a portion thereof during all that time to his individual benefit, and now refuses to pay therefor. 2d. For not devoting his the defendant's time during the partnership or any part thereof to the business of the firm as required by the terms of the article, but on the contrary, devoting his time and attention principally to the individual business of himself, the defendant. 3d. For throwing the whole burthen of the copartnership on the complainant, for which complainant claims damages. 4th. That the defendant and his clerk during the continuance of said copartnership, appropriated

liquors of different kinds, and goods, wares and merchandizes, belonging to the firm, to the individual use of the said defendant, without charging the same in account to the defendant.

The bill also states that in the division of the copartnership goods, the defendant received more than his share, to the amount of about $45, for which he agreed to account; that in the division of the accounts divers errors exist to the prejudice of the complainant; that some of the accounts assigned to complainant have been received by defendant to his own use, and he refuses to account for them; a statement of which errors is annexed in a schedule; that on 1st of April, 1831, complainant lent the firm $200, and took a due bill, the half of which, with interest, the complainant claims should be allowed to him against defendant, but which the defendant refuses to allow; that after the dissolution and agreement by the defendant to pay half the copartnership debts, to wit, on the 6th June, 1833, complainant, at the request of defendant, paid A. L. Marvin & Co. of the city of New-York, $26,66, being the balance due them from the firm of Leiber & Caldwell, one half of which, with interest, the complainant claims; that on the 14th April, 1832, complainant made his note to defendant for $1500 at the Tanner's Bank at Catskill, endorsed by Joshua Reed and George Spencer, for the benefit of the firm; that it was given to the defendant to get discounted; that the bank declined discounting it, and that defendant, instead of returning it, fraudulently withheld and attempted to collect it of complainant by setting it off against a claim for which complainant had sued him in the supreme court; that he still holds the note and refuses to give it up; that on the 1st July, 1829, the complainant was appointed assistant post master, by David M. Sacia, Esq. of Canajoharie, and performed the duties till April, 1833, the whole profit of which was $516,91; which was received by the said firm of Leiber & Caldwell, and was applied to their use, and the defendant has not accounted with complainant for the same, and refuses so to do. A statement of this claim is annexed to the bill, in which bill the complainant claims that one half

the amount may be allowed to him against the defendant. The bill alleges that the complainant has several times called for an amicable settlement, and that the defendant has refused, &c.

The defendant answered under oath, admitting some part of the allegations of the bill and denying others, and setting up charges and claims against the complainant. A particular statement of the answer will be given when I come to consider each exception, as far as may be material to a decision of this cause. A replication was filed and proofs were taken, and the cause was brought to a hearing before my predecessor, who, on the 23d February, 1836, made an order referring it to a master, residing in the county of Montgomery, to take and state an account of all and every of the debts, and claims, and demands due to or from either of the parties, and the dealings and transactions of the copartnership mentioned in the pleadings as having subsisted and been carried on between the parties, and especially of the money property, goods and effects received and paid out, disbursed or otherwise disposed of by the said parties or either of them ; and of all losses sustained by the carelessness, omission, or negligence of either of the said parties in relation to their respective duties as members of the said copartnership, or to any express stipulation between them in respect to the business of the said copartnership or any part thereof; and of all demands which either of the said parties has against the said copartnership for labor, care and diligence, done and performed for the said partnership ; and that the said master should take and state another account of all other matters of account arising upon the pleadings in this cause. The order makes provision for examining the parties on oath, and using the testimony already taken, and for producing other testimony on the reference, and for inspecting books, &c. Under that order the parties have been heard before the master, a mass of other testimony has been collected, and the master has reported a balance in favor of the complainant, against the defendant, of $3394,04. And the defendant has interposed fourteen exceptions to this report.

The first exception is, " for that the master has charged the defendant $30 cash, paid May 30, 1833, by Julius Fairchild to E. & J. Herrick, for said defendant, out of the funds belonging to the firm of Lieber & Caldwell, $500, and for $133,93, the interest thereon to the date of the report, whereas the same or any part thereof ought not to have been charged." There are two objections to the allowance of the above sums by the master : 1st. The charge is no where claimed in the bill ; 2d. It is not supported by the proof. I have examined the bill carefully and am satisfied that it contains no averment or allegation under which the charge in question can be made. That which comes the nearest to it, is the one on the 30th page of the bill, in which the defendant and his clerks are charged with appropriating liquors of different kinds, and goods, wares and merchadizes belonging to the firm, to the defendant's individual use, without charging the same to the defendant in the partnership books ; but this charge is expressly confined to such appropriation of the goods of the firm during the continuance of the said copartnership. It was evidently understood by the complainant as relating to matters occurring at the store at Canajoharie, before the dissolution, and not to the appropriation of property in large amounts afterwards and at different places. And it was so understood by the defendant, as may be seen in the denial in his answer at pages 36 and 37. This exception, therefore, raises the question whether the complainant is entitled to recover a sum of money not claimed in the bill. It is a general principle that a complainant is not permitted to prove any matter not alleged in his bill. A recovery in this court, as well as in a court of law, must be *secundam allegata et probata*. The reason of which is, that the adverse party may be apprised against what suggestions he is to prepare his defence. A charge, it is true, in general terms, will frequently warrant the production of evidence of particular facts. And such would have been the rule doubtless in the present case. (*See Cooper's Eq.* 7.) In the case of *Clark* v. *Turton*, (10 *Ves.* 240,) a similar question arose upon a bill by a devisee against the heir at law. An objection was

taken by the defendant that the plaintiff was proved to be an alien papist. The answer to the objection was, that it was not in issue by the pleadings. The master of the rolls would not permit the depositions to be read. The facts established by the evidence were a defence to the suit, but as the plaintiff had not set them forth in the bill, and the defendant had not insisted upon them in his answer, they were disregarded. The case of *James* v. *M'Kernon*, (6 *John. Rep.* 543,) was a decision in the court of errors, and is a strong case to this point. The plaintiff filed his bill for an account. The defendant set up in his answer, in defence, an agreement under seal, and the complainant showed the agreement to be fraudulent and void, and the chancellor disregarded the agreement and directed an account to be taken. The defendant appealed to the court for the correction of errors, and the main ground relied on by his counsel was, that the evidence as to the fraud in the agreement should be disregarded, because there was no allegation to that effect in the bill. In delivering his opinion in the appellate court, Spencer, J. says: " The decree cannot be supported, if the evidence in the cause was ever so strong to prove fraud on the part of the appellant; and for this plain reason, that the court cannot afford relief not sought for by the bill, and entertain the question of fraud which is not so much as suggested by the complainant. It is an invariable and universal rule of the court of chancery to found its decrees on some matter put in issue between the parties by the bill and answer." This doctrine was again asserted by Chancellor Kent, in *Underhill* v. *Van Cortland*, (2 *John. Ch. Rep.* 355,) and repeated by Chancellor Walworth in the case of *The Ontario Bank* v. *Root*, (3 *Paige*, 481,) Nor is it necessary that the objection should be taken to the admissibility of the evidence before the examiner, or by a motion to suppress it at the hearing. Both these modes probably may be adopted. In *Clark* v. *Turton*, (11 *Ves.* 240,) the depositions were suppressed at the hearing. And in *James* v. *M'Kernon*, Kent, Ch. J. in allusion to a similar objection raised there, repudiated it. Indeed that was a stronger case than this, as the objection was not raised at

the hearing before the chancellor, but was for the first time started in the court for the correction of errors. An objection of this kind is not waived by delay. These remarks dispose of this exception ; but I have also *ex gratia* looked into the testimony in relation to this exception, and I do not think it sufficient to justify the charge.

The second exception is, for charging the defendant with the sum of $100 for use and occupation of the store of the firm of Lieber & Caldwell by the defendant's clerk, &c. in the transaction of defendant's private business, and for fuel, lights, &c. for four years, at $25 per year, whereas no part of it ought to have been allowed. This charge is put forth in the bill as a violation of the covenant contained in the articles of copartnership. The covenant alluded to is probably the covenant for quiet enjoyment, contained in the agreement to lease the store. There is no other covenant to which this charge is strictly applicable. The defendant denies the charges, and alleges that he has appropriated the store to the business of the firm according to the true intent and meaning of the articles of copartnership, and to that use exclusively, except when it was necessary for him to attend to his reserved business ; and that in attending to the other business, which was reserved to him by the articles of copartnership, it was beneficial to the firm of Leiber & Caldwell for the defendant to attend to the same, as has been usual, at the store in question, rather than to absent himself. The answer also alleges, that soon after the commencement of the partnership the defendant erected at his own expense an addition to the said store, in which addition he kept his desk and papers relating to his said reserved business, except for a short time, and the residue of said addition was used by the firm. It is proved that the defendant in the spring of 1829, put up an addition to the store, about 15 by 25 feet, in which his desk and papers were kept relating to his other business, and that he and a private clerk attended there from time to time as the exigency of his private business required during the partnership. No one witness has sworn that this occasioned any damage to the firm of Lieber & Caldwell, by the occupation of space required for their

business, or that Lieber was more engaged in his private and reserved business than was necessary to conduct the same in a safe and profitable manner, or that this was an unwarrantable or unusual place to transact the same. A covenant for quiet enjoyment goes to the possession, and not to the title, and is only broken by an entry and expulsion from, or some actual disturbance in the possession. This appears to be a technical rule at law, and is well supported by authority. (5 *John. Rep.* 120. 15 *Id.* 483.) In this case the defendant, as one of the firm of Leiber & Caldwell, had a right to be in the store. He did not expel his copartner or disturb him in his possession. There is no evidence that he complained of his being there. I am clearly of opinion that this charge cannot be supported as a breach of the covenant in question. Nor can it be supported on the ground that the occupation by defendant, as proved, was a violation of any other covenant, or a violation of the rights of the partnership, independently of the express contract. All the provisions contained in the copartnership articles must be construed together. By those articles the defendant had a right to be concerned in the mercantile house of H. Lieber & Co. at Palatine Bridge, and of continuing the distilling, milling and brewing business. It was foreseen by the parties that an attention to that reserved business by the defendant would so occupy his time as to injure the establishment then created. Hence the necessity of providing for it in the articles. No place is specified where the defendant should keep his office. He had the right therefore, and it was his duty, to occupy such spot as would the best enable him to advance and promote the joint trade and stock of that firm without fraud or deceit, and while it would promote his own advantage, would do the least injury to the firm of Lieber & Caldwell. The right of one partner to be engaged in other business without a liability to account, and some other matters having a bearing on this point, will more properly be considered under the next exception. In the meantime, it may be further observed, that the settlements between the partners at the end of the first year, and on the 6th October, 1830, and again

on the 6th April, 1831—covering a period of one half the entire partnership, in which nothing is said of this claim—afford strong reason to believe that the charge in question was not originally supposed to exist in point of fact. Would it not have been thought of in some of those settlements, if it had been then imagined that the defendant's occupation of the room in the manner proved, was injurious to the rights of the firm Lieber & Caldwell? It seems to me that if the defendant had absented himself from the store in question in order to attend to his reserved business, it would have furnished a much stronger ground of complaint on the part of Mr. Caldwell than the facts in the present case afford. There is no equity in this charge; and for the reasons above stated, and such as may be stated under the next exception, I shall allow the second exception.

The third exception is for the charge of $2000 (afterwards reduced to $1800) against the defendant, to the credit of the said firm, for the said damages arising from a breach of the articles of copartnership, in not giving his attendance to the trade and business of the copartnership. The defendant in his answer alleges that he did, during the copartnership, devote all his time and attention to the business of the said firm, as required to do by the terms and true intent and meaning of the said articles; and devoted no more of it to his individual business than, according to the understanding between them, was reserved to him by the articles of copartnership. He alleges that it was the intention of the parties when the partnership was formed, that the complainant should take the principal charge of the firm of Leiber & Caldwell, and devote his whole time, labor and attention to the same so as to enable the defendant to attend to his other business. The issue between the parties as formed by the pleadings, is, whether the defendant devoted as much time and attendance to the business of the firm, as was required by the copartnership articles. The questions under this exception may be considered under a threefold aspect: 1. As to the rights of partners, when there are no mutual covenants; 2. To the influence and effect which the covenants in this case bear upon the rights of

the parties; and 3. To the rights of these parties, as the case stands on the pleadings and proofs. First, as to the rights of partners as against each other, when there are no mutual covenants. A partnership is defined to be a voluntary contract between two or more persons joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a communion of profit between them and for the purpose of carrying on a legal trade, business or adventure. (*Coll. on Part.* 2.) A partnership may well exist with a right to an equal participation in the profits, although the parties may contribute to the fund or stock in unequal proportions. One, for example, may devote money or goods, and the other labor and skill. One may own the buildings and be possessed of the "good will" of the business, and the other may possess other qualities which compensate for this. The general obligation which partners owe to each other are good faith. To ensure a successful business, they should be able to repose in each other a mutual confidence. This is indispensible to the welfare of society. Every species of fraud, therefore, is an offence against the partnership; and the obligation implied among partners when there are no articles, says Lord Eldon, in *Crawsberry* v. *Collins*, (15 *Ves.* 226,) is, that they are to use the joint property for the benefit of all whose property it is. It is also the duty of partners to devote themselves to the interests of the firm. No partner has a right to engage in any business which must necessarily deprive the partnership of a portion of his skill, industry, or capital, which he is bound to devote to the partnership. Where there are no covenants, a man may engage in as many partnerships as he pleases, provided he does not violate the above principle. (*See the opinion of the Vice Chancellor in Glassington* v. *Thwaites*, 1 *Sim. & Stu.* 124.) It was urged by one of the complainant's counsel, that the defendant was bound to devote all his time personally to the concern of Lieber & Caldwell. Such duty would not be required of him if there were no written articles. In *Peacock* v. *Peacock*, (16 *Ves.* 495,) Lord Eldon held, that the good faith of the partners is mutually pledged to each other

1839.

Caldwell
v.
Leiber.

that the business shall be conducted with their actual personal interposition, enabling each to see that the other is carrying it on for their mutual advantage and not destroying it. But this remark was made in a case where one partner had restrained the other from entering the house where the business was conducted, and the point decided was, that one partner could not thus exclude the other from an equal management of the concern; not that it was the duty of all to be continually present. Where there is no special agreement to that effect, partners are not entitled to charge each other for their services in the management of the concern; and the law never undertakes to settle between them their various and unequal services in the transaction of their private affairs. (19 *Com. Law Rep.* 157. 3 *Id.* 433.) The attempt would be altogether impracticable. One man may possess advantages over his partner in one respect, which may be made up to the latter in the possession of some quality in which the former is deficient. One may have an established reputation in the neighborhood in which he lives for honesty and fair dealing; he may be surrounded by numerous and powerful friends; he may enjoy in an eminent degree the confidence of his fellow citizens; he may possess wisdom and sagacity in directing the general management of his affairs. Another, though destitute of some of these advantages, may nevertheless be a valuable partner, for his activity in business, his knowledge and skill as an accountant, or his tact as a salesman. These things are all taken into the account by the parties when they form a connection. They deal with each other, in making the bargain, at arms length, and each trusts to his own wisdom to secure as many of the advantages resulting from the copartnership as he can. A bill in equity could not be sustained by a partner, at the close of the concern, to compel a copartner to make up deficiencies arising from his want of business talent. I apprehend nothing short of a breach of good faith, amounting to fraud, will justify the interference of the court in estimating the value of a partner's services to the firm. A case may be imagined of such gross dereliction of duty on the part of a partner as to justify the court in declaring a dissolution of

the firm. (1 *Jac. & Walk.* 569.) And nothing short of such a case, in my judgment, will warrant a reference to a master to ascertain the value of the services of each, with a view to a decree that shall produce an equality between them. Nothing is more common than that one of the members of a firm should have other business to transact. All that can be required in such a case is, that he engage in no business which makes it for his interest to deal unjustly with his partners; that he acts in good faith towards his associates and does not seek to make the common good subservient to his own personal advantage. (*Featherstonhaugh* v. *Fenyuck*, 1 *Sim. & Stu.* 177. *Madd. & Geld.* 367.) If, then, the present case was without any written articles of partnership, and the pleadings were properly shaped, I think this court might have ordered a reference to inquire whether *the* defendant's being engaged in the store of H. Lieber & Co. at Palatine Bridge, and his continuing the distilling, milling and brewing business, were acts incompatible with the rights of the partnership of Leiber & Caldwell, and if so, to decree a dissolution and an account. But if the defendant could discharge his duty to both houses, and perform the other business without prejudice to the rights of his associates in the store, no court could or ought to interfere.

The second inquiry under this exception is as to the effect which the covenants in this case have upon the rights of these parties. The written articles of copartnership are the law made by the parties for their own government, and by which the duties and obligations arising from the partnership relation are regulated as far as they are touched by the express contract; and so far as it does not reach all those duties and obligations, they are implied by the general law. (*See* 15 *Vesey*, 226.) Keeping in mind the issue between the parties, the inquiry is, what were the duties and obligations created by these articles? These articles bind the parties not to be engaged in the same mercantile trade to their private advantage, nor to be engaged with others in such trade as may have a tendency in any way to injure this establishment, except and reserving, &c. If either party could eagage in

1839.

Caldwell
v.
Leiber.

other business which would not have a tendency to injure their establishment in Church-street, he was at liberty to do so; no matter what the business was. And the defendant, in addition to this privilege, had a right to continue in the house of H. Leiber & Co. at Palatine Bridge, and to continue the distilling, milling and brewing business, without reference to the question whether he thereby injured the business of the firm of Leiber & Caldwell. Such is the obvious import and fair construction of this agreement. It will thus be seen that the articles very essentially change the rights of the parties from what they would otherwise be at common law. And this brings me to the third point under this exception, to consider the rights of these parties as they are exhibited by the pleadings and proofs. Before the complainant can call on the defendant for damages for not devoting his time during the copartnership to the business of the firm, he must show a neglect on the part of defendant, so gross as to amount to a breach of good faith, and to be a fraud on his copartner. Proving merely that the defendant did not devote all his time to the business of the firm of Leiber & Caldwell, does not maintain the issue on his part. The defendant was not bound to devote all his time to that concern. It was obviously contemplated by the parties, that a portion of the defendant's time would be devoted to his excepted business. This was a part of the agreement. Proving, therefore, that the defendant did not devote as much time as the complainant did to the business of the firm, also fails to establish the issue; in part for the reasons aforesaid, and in part from the relation the parties bore to each other before the partnership was formed. The defendant was an old established merchant, having been twelve or fourteen years in business in that place; a man of correct habits and fair character, and engaged at the time in extensive and various commercial and other transactions. The complainant was a single man, engaged in a store in New-York, and no doubt stated the truth in his letter to Mr. Leiber, before the partnership was formed, when he expressed the belief that it would be best for the defendant to have some person take hold and drive his mer-

cantile part of the business as it should be done, and that the defendant would then be able to attend to all his other business himself; and that would be as much or more than the defendant would want to attend to. Such were the complainant's views before the partnership was formed. Who can read the articles of partnership without perceiving that this advice of the complainant was listened to when those articles were drawn up? Could a young man from the city, with a small capital, however accomplished his education or fair his character, expect to enter into partnership with a well established house on better terms? Would not a stranger expect that the good will of the store, created by years of patient industry and good conduct, and the advantages which established character and extensive business would bring to the concern, were more than equal to the superior activity of youth, or the business tact which a residence in the city had supplied? No doubt all these matters were considered when the articles were signed. The complainant did not neglect the copartnership business at any time from a mere spirit of sloth, carelessness or inattention. Those qualities are not imputed to him by any body. The complainant himself has been heard to say that he did not care whether Mr. Leiber made any sales or not. It is probable the complainant was a more finished salesman than the defendant, and that he thought the interest of the concern would be promoted by attending to that department himself. This is well enough in itself, but he should not urge the absence of the defendant, which he has occasioned by his own act, or which he considered of no importance, as a breach of the copartnership articles. The defendant certainly did assist in transacting the business of the store. He is proved to have done so by several witnesses. He assisted in the outdoor business. No positive neglect, to the injury of the concern, is proved by any body; nor did Caldwell do the whole of the business though beyond doubt he did much more than Mr. Leiber. There were from two to four clerks hired by the firm. I have carefully read all the testimony in the case, and can find nothing that satisfies me that the defendant has violated his contract, or that he has failed to devote

as much time and attendance to the company as he was bound to do by the articles, or that he has been guilty of fraud or bad faith towards his copartner.

Again ; the settlements which took place between the parties at the end of the first year, and on the 6th October, 1830, and 6th April, 1831, although not conclusive, afford strong presumptive evidence that the complainant did not, as late as the 6th April, 1831, two years after the copartnership was formed, suppose that he had a claim against the defendant for a breach of this contract to the extent of $500 a year, or any other sum.   On each of those settlements the complainant was found to be indebted to the firm, and on the two last he executed notes to the firm.   Would he have done so had he been entitled to a credit from the firm for the sum now in dispute ?   I shall allow this exception.

The fourth exception is, for the master having charged the firm of Leiber & Caldwell, to the credit of the complainant, with the sum of $150, as of April 1, 1831, for the amount of a due bill for $200 of which $50 had been paid, and also with $62,88 for interest, whereas nothing should have been allowed.   The answer admits that the complainant, on the 1st of April, 1831, lent the firm $200 and took a due bill, but denies that it is still due, and insists that it was repaid as follows : May 10, 1831, the sum of $50, and the next day $150,55 in full of balance, as did once appear by entries in the cash book of Leiber & Caldwell; but that the leaf has disappeared ; and the defendant charges that it has been fraudulently removed.   The defendant alleges that the payment still appears by an abstract which he offers to produce, &c.   Although the bill is not under oath, there is something remarkable in the manner in which the charge for this $200 is made.   It alleges that the complainant " lent the firm on the 1st April, 1831, the sum of $200, for which he (the complainant) has in his possession a due bill, in the words, &c. (setting it out) one half of which the said Henry has not accounted to your orator for, but on the contrary refuses, &c. which your orator claims with the interest."   There is no interrogatory framed upon this charge, nor is it alleged that the amount remains due.   The an-

swer of the defendant is positive, and not according to the defendant's information and belief, so far as relates to the repayment, and must be, I think, treated as responsive to the bill. The averment as to the fraudulent destruction of the leaf in the cash book not being responsive must be proved by the defendant, if it is material. The allusion by the defendant, in his allegation of payment, to the entries in the cash book as affording the evidence as to the time and manner of the repayment, does not take from the answer the character of a responsive denial. The cash book was under the complainant's control; and if it did appear there that it was repaid, in the manner stated, no doubt would remain of the truth of that fact. The complainant holding the affirmative must show that the money is due to him. The possession of the note by him, under the circumstances of the case, affords but a slight presumption in his favor. It is perhaps sufficient to repel the presumption against him resulting from the settlement on the 6th April, 1831. Had this note been settled then, it would probably have been given up. The evidence afforded by the payment register, pages 21 and 25, that the whole note is due, except the $50 marked there as being paid, is very equivocal. A party who seeks to charge another a disputed sum of money, and to support the charge by his book, must present one free from exceptions. The blots and marks on this book afford evidence that all the charges in it have been settled. The unfortunate absence of a leaf on cash book No. 37, imposes on us the necessity of deciding the case by presumptive evidence. There is no proof that the complainant abstracted the leaf in question. He is not, therefore, chargeable with fraud in that respect. But is it reasonable to suppose that the complainant would have remained in the firm two years engaged in active business, constantly receiving and paying out money, and not retain the amount he had lent the firm on the 1st April, 1831? That the note was not destroyed, may be accounted for without impeaching the integrity of the parties. I think the defendant's answer imposed upon this complainant the necessity of further

explanations than he has given. The master ought to have rejected this charge. I therefore allow the fourth exception.

The fifth exception is for charging the defendant with two-thirds of a note of $88,58 from Oliver Wood and Peter A. Smith, and the interest thereon. I have examined the pleadings and proofs in relation to the nature of this exception. The answer sets up matter in avoidance, and there is no sufficient evidence to induce me to interefore with the report of the master in this respect.

The sixth exception is for charging the firm of Leiber & Caldwell, to the credit of the complainant, with $516,91 and interest, for post office money from July 1, 1829, to April 1, 1833, as belonging to Caldwell individually. The bill alleges that the complainant was deputy post master from July, 1829, through the rest of the term of the partnership, and that the funds arising therefrom were put into the funds of the firm. The answer admits the above facts, and states that the office was kept in the store, by the complainant, according to the agreement and understanding of the complainant and defendant that the profits should belong to the firm, &c.; and that the company clerks and sometimes the defendant did the business. From the observation made under the third exception as to the duties and obligations of partners to each other, it seems to follow that in the absence of any agreement between the partners, Mr. Caldwell might receive the appointment of post master and keep the office in the store, and still be entitled to the whole fees. If the keeping the office in the store was an injury he would be liable to make it good to the defendant, and the defendant would have a right, if he found the interests of the partnership injuriously affected by it, to require the complainant to abandon it. Neither party, it has been shown, has a right at common law to engage in any business prejudicial to the firm. Under the articles of copartnership, as has been already remarked, either party might engage in any business which did not tend to the injury of the establishment. But the defendant has not put himself upon the ground of an injury to the firm by reason of the post office. He claims one half of the profits as matter of

right, by force of the agreement. He has, however, failed in proving the agreement; and the case therefore stands as it would at common law, modified by the copartnership articles. The pleadings did not present the question whether the post office was of more injury than benefit to the store, and I think the master was right in allowing the charge. The defendant says only one-half is claimed in the bill, and the master has allowed the whole. It will be seen that the whole fees were mingled with the partnership funds, and of course the complainant, as one of the firm, received half. He therefore only claims the other half against the defendant, or, which is the same thing, that the firm should be charged, to the credit of the complainant, with the whole sum; as has been done by the master. The exception is therefore overruled.

The seventh exception is for refusing to charge the complainant, to the credit of the firm of Leiber & Caldwell, for damages arising from water getting into the cellar of the firm, and injuring goods to the amount of $120. I do not think the testimony makes out a case of such gross dereliction of duty as to make the complainant liable for the goods damaged by the freshet. The master was right in refusing to allow the charge. This exception is also overruled.

The eighth exception is for refusing to charge the complainant, to the credit of the firm, with the sum of $200, for cash, of the partnership funds, lent by the complainant to Andrew Hibbard about the 14th of May, 1831, and interest thereon. I see no reason to differ from the master in regard to this matter, and therefore overrule the eighth exception. And the like decision is made as to the ninth, tenth and eleventh exceptions.

The claim on which the twelfth exception is founded is not set up in the answer or in the schedule, and the master was right in disallowing it.

The master decided correctly in disallowing the claim covered by the thirteenth exception. It was not properly set up in the answer, and could not be considered a proper subject of inquiry in this reference. The defendant has an

adequate remedy at law under the bond of indemnity. And the exception must be overruled.

The fourteenth exception is, that the master has charged the complainant only $100, to the credit of the firm, for the use of the warehouse, when it ought to have been $200. There is no evidence of any express agreement for the rent of the warehouse, nor is the value of it very distinctly proved. It is very probable the master may not have allowed enough for it. It was purely a question of damages, and the proof will not justify me in allowing the exception. I shall accordingly overrule it.

This disposes of the whole of this cause. There is no occasion for again setting this cause down for hearing. The complainant will be entitled to a decree against the defendant for the balance as reported by the master, after deducting the amount contained in the four first exceptions. The deduction can be made from the proper schedules, and the amount can be stated in the decree, without sending the report again to the master.

The question of costs has also been argued; and though the complainant has proved that he several times demanded a settlement of the defendant before the suit was commenced and that the defendant refused to come to a settlement, I am not satisfied that he is entitled to costs. With regard to the division of the partnership property and accounts, &c. it seems that the defendant made no objection, and it was amicably effected. Nothing was, therefore, left but the claims covered by this litigation. If the complainant, when he demanded a settlement, furnished a schedule of his claims which embraced those presented to and disallowed by the master, the defendant was justified in refusing to settle on such a basis. A party who wishes to put his adversary in fault, on the ground of a refusal to settle, should present a statement of such claims only as the former is entitled to, and as the latter ought in justice to allow. Again; the defendant has succeeded in resisting the most important part of the complainant's claim. Probably a majority of the expenses before the master grew out of the matters covered by the four first exceptions. It would be unjust to make the de-

fendant pay the complainant costs with respect to those matters, and it would be difficult, if not impossible, to separate them from the other costs. The effect of the decree doubtless will be to put an end to all the partnership difficulties between these parties. And it is inequitable, under the circumstances, to compel the defendant to pay the whole expenses of winding up their partnership affairs. But the complainant has succeeded as to a part of his claim, and the defendant is not free from fault in presenting unfounded claims against the complainant. There has also been a vast amount of testimony taken, and it has been spun out, doubtless through the ardent zeal and solicitude of the parties, to an uncommon length. If parties were sensible that the expense would fall wholly on themselves they would not bring before the court, in the shape of depositions and other proofs, any matter which did not bear on the issue. The testimony would be condensed by stating only what the witness knows and swears to, without inserting also his remarks about what he does not know and his apology for his ignorance.

On the whole, as the parties have mutually interposed claims against each other which are unjust, I shall direct that neither party recover costs as against the other.

*D. Cady*, for the complainant.

*H. Loucks*, for the defendant.

THE CHANCELLOR. The claim of the complainant which is embraced in the third exception, although in form a claim for damages sustained by the firm by the neglect of the defendant to attend to the partnership business, was in substance a claim for the extra services which the complainant had bestowed upon the business of the copartnership, beyond his rateable proportion of duty. Partners are not entitled to charge each other, or the firm of which they are members, for their services in the copartnership business, unless there is a special agreement to that effect ; or where such an agreement can be implied from the course of business

between the copartners, as by making such allowances in the adjustment of the accounts from time to time during the continuance of the copartnership, or from the nature of the service performed being that which is not usual for one copartner to perform without receiving a separate compensation therefor. Each partner in the management of the copartnership business is attending to his own interest therein, as well as to the interest of his copartner; and the law implies no agreement to compensate either of the copartners for their various and unequal duties and services in the management of the business of the firm, although one of the copartners may be answerable to the other for an injury which the company has sustained by his fraudulent misconduct in violation of his duty as a partner. (*Colly. on Part.* 99, *note.*) I am also satisfied in this case, from the articles of copartnership, that it was not intended by the parties that Leiber should devote his whole time to the business of the copartnership exclusively. I think the vice chancellor was therefore right in allowing this exception to the report. He was also right in supposing that the neglect of the complainant to interpose this claim at the time of the adjustment of the accounts, in 1830 and 1831, was evidence to show that the claim as now made is unfounded. (*See Thornton* v. *Proctor,* 1 *Anst. Rep.* 90.)

I think the fifth exception was properly disallowed. The allegation in the answer that nothing was ever realized on the note of Wood & Smith is not responsive to the bill, and is not supported by the proof. I think it is pretty evident that this debt was included in the personal mortgage afterwards given to Leiber & Anderson. And it would be a fraud upon the complainant for them to apply the whole property obtained under that mortgage, to the satisfaction of the debts of Leiber & Anderson to the exclusion of the debt due to the other firm. Even it if was satisfactorily proved that Leiber was not to account for this debt unless it was collected, he was still bound to use the same diligence in securing its collection as he was in obtaining payment of debts due to the other firm in which he was interested.

· The sixth exception relates to the claim of the defendant to one half the monies which went into the firm, arising from the post office. The fact that there was an agreement or understanding between the parties that the profits should go to the firm is sworn to by the defendant, in his answer. This part of the answer, however, is not responsive to the bill, and the rights of the parties therefore must depend upon the proof. In relation to this claim it is proper to remark, that neither of the partners was the post master and as such entitled to the fees and emoluments of the office. But the office was kept at their store, by an arrangement with the post master, and the perquisites were received as an equivalent for the performance of the duties and assuming the responsibilities of the office ; and the complainant took the appointment of deputy merely to enable him to perform the duty consistently with the laws and regulations of the post office department. This business, as I understand the testimony, commenced subsequent to the formation of the copartnership ; and of course no provision was made for it in the partnership articles. The understanding between the parties in relation to it, therefore, can only be inferred from the manner in which the business was transacted. It appears, from the testimony, that the business was not only conducted in the store of the firm, by the copartners and their clerks indiscriminately, but that all the accounts and entries were kept in the firm books ; that the monies all went into the partnership funds ; and that the sums paid to the general post office were also taken out of the funds of the firm. This mode of doing the business seems to be wholly inconsistent with the idea that one of the partners only, who was nominally the deputy, was to have all the profits of this agency, while the firm did the business and ran the risks of the collection of the postages and of mistakes in the keeping of the accounts, &c. These circumstances, in connection with the fact that no claim to the exclusive right to the whole of the profits of this agency appears to have been made at the adjustment of the accounts, in 1830 and 1831, are satisfactory evidence to my mind that such was not the understanding of the parties. The declaration of Caldwell, that " he had·

the profits of the office for the trouble of attending to it, and that the trouble of taking care of it was as much or more than the profits," even if it could be evidence in his own favor, amounts to nothing in the decision of the question in controversy here. He unquestionably, in that conversation, alluded to the arrangement which had been made between him and the post master as to the keeping the office at the store; and not to an understanding between himself and his copartner that as between them he was to have the exclusive right to such profits. For these reasons I think this exception should have been allowed.

There is no pretence for charging the complainant with the loss occasioned by the water in the cellar, as it was a mere mistake of judgment on his part in supposing there was no danger to be apprehended from the rising of the water. Certainly one partner cannot be answerable to another for an honest mistake of judgment as to what will be most beneficial to the common interest of both. And although the complainant was told that Leiber had directed the clerks to remove these things from the cellar, he unquestionably wanted their services at that time in some other part of the business which he deemed more important to the interests of the firm. There is no ground even to suspect that his object was merely to thwart the wishes of his copartner. The seventh exception was, therefore, properly overruled.

Entries in the copartnership books, made during the continuance of the copartnership, are, as a general rule, evidence for and against the different members of the firm, in a subsequent adjustment of their accounts between themselves. And it lies upon the party alleging a fraud or mistake in such entries to prove it. I do not think there was sufficient evidence in this case to have justified the master in charging the complainant with the $70, upon the supposition that he had fraudulently interpolated the credit of the 10th of December, 1832, in the books of the firm. The ninth exception was, therefore, properly overruled.

The eleventh exception relates to a private claim against the complainant, which had nothing to do with the copartnership transactions; and as it was one of the items of set-

off specified in the bill of particulars, in the suit at law, there is very little doubt that the claim was either abandoned as unjust, or that what was equitably due thereon was allowed in the adjustment of that suit. The master was therefore right in not allowing it here ; and the exception to his report in this respect was properly overruled.

I am not satisfied, from the testimony, that the firm of Leiber & Caldwell ought to be charged with the $410,27, referred to in the twelfth exception. And as all the circumstances in reference to the alleged mistake were known to the defendant long before this controversy had commenced, and he did not venture to set up such a claim in his answer, and to swear to his belief in the justice thereof, the twelfth exception was properly overruled.

The vice chancellor was clearly right in not allowing to either party costs as against the other. Previous to the commencement of the suit, and during the whole progress of it, claims have been made and resisted by each partner, as to which in the end he was found to be wrong. Neither party, therefore, had the power of adjusting these conflicting claims except by a resort to a court of equity, unless his adversary would come to an amicable arrangement, by relinquishing his unfounded claims, and thus save the expense of this litigation. It would unquestionably have been better for both parties to have submitted the questions in controversy to some of their intelligent neighbors mutually agreed upon between them. But there is no rule of this court which compels a party to take the settlement of his claims from the legally constituted tribunals of the state, and submit them to arbitration, at the peril of paying costs to his adversary if he refuses to do so. The costs of this litigation appears to be a necessary expense of the disputes between the parties in closing up the concerns of this copartnership. It is therefore an item in the account of profit and loss which it would have been much better for both parties to have saved, by mutual concessions, or otherwise ; but which loss I cannot charge either party with exclusively. And the share of each will probably bear a relative proportion to his interest in the profits of

the partnership business. The decree of the vice chancellor must therefore be affirmed, with a modification of the same in the matter of the sixth exception, without costs to either party on their respective appeals. That exception must be allowed ; and the sum of $327,80, for one half of the post office profits, with the interest thereon from the 25th of May, 1833, to the date of the master's report, must be deducted from the balance decreed to the complainant by the vice chancellor. The balance, with interest thereon from the date of the master's report, must be paid to complainant by Leiber. The decree may remain and be enrolled here, as there will be no benefit to either party in sending it back to the vice chancellor.