The Chancellor.
The first exception on the part of the defendant to the report of the master is, that he has allowed to the complainant interest on the moneys advanced by him to the firm.
There is no ground for the suggestion contained in the exception, that those moneys were the capital advanced by him, as partner, against the labor and skill of the exceptant. There were no written articles of partnership. The evidence of its existence lay in parol and in the written agreement of the two partners to construct and equip the Flushing railroad. The evidence shows that it was an equal partnership. There was no agreement to contribute capital, nor does any seem to have been contributed. Each contributed his skill and labor to the purposes of the partnership; the complainant contributing his credit, skill, and financial ability, as a railroad contractor and negotiator of securities, and having immediate charge of the finances of the firm; the defendant contributing his skill and experience, as an engi *46 neer, and having the entire control and superintendence of the construction of the road.
But it is urged that, where there is no agreement for interest, no interest ought to be allowed for money advanced by a partner to the firm until the accounts of the firm and the balance due is settled and adjusted. The right of a partner to receive interest on advances made by him for the benefit of the firm, in the absence of an express agreement for that purpose, rests upon the usage of trade, the usage raising an implied contract to pay interest on the principal advanced. Collyer on Partnership, § 388; Renss. Glass Factory v. Reid, 5 Cowen 587; Hodges v. Parker, 17 Vermont 242.
Where the party charged with interest has notice of the advances, or where, from the circumstances of the firm and the nature of the business transacted, they must be presumed to have been known and approved by him, the claim for interest is legal and equitable. • In the. language of Lord Langdale, interest should be given, if you can collect from circumstances or from the usage between the parties, that there ought to be or was intended to be such a computation of interest. Miller v. Craig, 6 Beavan 433.
In the present case, the propriety of the claim for interest admits of no doubt. The business of the firm was the construction and equipment of a railroad, the contract price of which was $238,286. Of this sum $113,000 was to be paid .in bonds of the company, payable in ten or fifteen years; $50,000 in the capital stock of the company, which could produce no revenue, and have no market value till the work was completed, and only $75,286 in cash. Payments were to be made upon the monthly estimates as the work progressed. The firm had no capital. Of necessity they must have relied upon temporary loans and upon the sale of the bonds to furnish capital to conduct their operations. In June, 1854, and in January and April, 1855, Morris was in advance to the firm over $90,000. This fact must have been known to Allen, and acquiesced in by him. He has been .examined as a witness, and neither in his answer nor in his *47 evidence is it suggested that these advances were made without his knowledge and concurrence, or that interest was not to be charged upon them. On the contrary, in his answer, he says that a large amount of the items charged as cash by the complainant, in his account, are the price of articles bought on a liberal credit, and at an enhanced price on account of such credit, and that the interest account, as stated in the schedule to complainant’s bill, is not on that account correct; but he does not object that interest is not chargeable.
The firm being liable for interest upon the advances made by each partner for the use of the partnership, interest will continue to run until the final settlement. The rule, that interest is not to be charged on the balance that may be found due to one of the parties upon the final settlement of accounts, does not apply. Nor was there any such delay on the part of the complainant in rendering his account as can affect his claim for interest.
The second exception is, that the master has allowed interest upon the amount of $46,222.44, the price of seven hundred tons of iron, from December first, 1853, when said iron was not furnished or paid for by complainant until long after said time. The objection is not sustained in point of fact. Morris testifies that he contracted to have the iron in September and October, 1853. It did not arrive till December, 1853, when he paid for it, as charged in his account.
The third exception is, that the master has allowed the complainant for losses sustained upon the sale of bonds belonging to the firm, which were received from the railroad in part payment of their contract. It is not denied that these bonds were a part of the assets of the firm, and that they were in the hands of Morris, to raise money upon them by hypothecation or sale. They were fairly sold, for the best price that could be obtained for them, with the knowledge of Allen.
It is not shown by the evidence that the value of the bonds was impaired, or the interest of the partners prejudiced by their hypothecation or by their sale. But if the fact were *48 otherwise — if the hypothecation was prejudicial to the interests of the firm, or if the time of the sale was injudicious, a partner is not liable to account to his copartners for an honest mistake of .judgment. Caldwell v. Lieber, 7 Paige 507; Story on Partnership, § 169.
Allen, moreover, was a director of the railroad company, and must have been acquainted with its condition and with the value of the bonds. He was present at the sale of the larger portion of the bonds, and it must be presumed to have been made with his concurrence and approbation. The sale, therefore, was in fact made with the approbation of both partners. It seems, moreover, to have been advantageously made, for the bonds were never worth as much afterwards as they brought at the sale.
•By the terms of the contract, the rail to be laid by Morris and Allen was to weigh fifty-six pounds per lineal yard. Morris ordered and procured a rail weighing fifty-seven pounds to the lineal yard, making a difference in the value of the iron of $851.40, which is deducted by the master from the account of Morris. This forms the subject of an exception by the complainant to the report. I concur with the master, that the fact that the rail was received and used by Allen upon the road, at a time when he was compelled to use the iron as delivered in order to complete the contract, cannot be deemed a waiver of his right. But I have enter-, tained very strong doubts whether, in view of the evidence in the cause, the ordering of a fifty-seven pound rail was not within the discretion of the partner, and if erroneous, constituted a mere error of judgment, for which he is not accountable.. By the law of the state, all iron rails for railroads are required to weigh at least fifty-six pounds to the lineal yard. It is shown by the evidence that rails of the same pattern vary more than a pound to the lineal yard, owing to the different density of the iron and the condition of the rollers. It might, therefore, have been a wise and prudent precaution to order the rail at least a pound heavier than *49 the lowest limit allowed by law to guard against the hazard of a violation of the statute.
RTor do I think it appears very clearly from the evidence ■chat the excess of weight is by any means so great as that assumed by the master. As I understand the result of the measurement by the witnesses, the rail delivered could not have averaged fifty-seven pounds to the lineal yard; so that the rail delivered was not in fact one pound to the lineal yard heavier than that ordered. But while I have inclined to think that the master has fallen into an error upon this point, my convictions are not so clear as to justify me in disturbing the report, after the careful examination that he appears to have given to tho subject.
The other exceptions on the part of the complainant are not sustained.
The exceptions of both parties are overruled, and the report of the master is in all things confirmed.