## J. H. BUDEKE *vs.* G. W. RATTERMAN.

### October Term, 1875.

PARTNERSHIP BOOKS—MODE OF USING THEM AS EVIDENCE.—Partnership books, to which all the partners have had access, are *prima facie* evidence for and against each partner; but they cannot be made exhibits, except to identify them, nor can either the court or the master be required to examine them in detail; they should be examined by experts, to ascertain balances, and to make out schedules of such items as may be in dispute, or tend to elucidate the contested matters of charge and discharge.

*John Ruhm*, for complainant.
*E. H. East*, for defendant.

THE CHANCELLOR :—The bill in this case was filed in 1870, alleging that the complainant and defendant and one Wallman went into partnership in the grocery and queensware

business, at Nashville, in March, 1859, each partner to contribute a certain equal capital, and share equally in the profits or losses. That the books were kept on a plan of the most primitive simplicity, showing only the receipts and disbursements—he, the complainant, being the cashier up to February, 1862, and afterwards the defendant Wallman becoming cashier, and so continuing up to dissolution, in March, 1866, the said Wallman being all the time the bookkeeper. That at the end of each year a settlement was made, to ascertain the situation of the business, in which, so long as complainant was cashier, he was charged with the gross receipts and credited with the gross disbursements, the difference between the two being treated as profits. In like manner, Wallman, when he became cashier, was charged and credited. Upon the basis of the settlements thus made, complainant became indebted to defendant Ratterman, and settled with him, leaving a small balance of about $177. That in March, 1866, complainant bought out Ratterman, the stock being valued by the parties, and complainant agreeing to pay him the one-third of the valuation, and did pay him $3,000, leaving about $1,300 to be paid. Complainant was also indebted to Ratterman by note, as to which there was no dispute. The bill was filed to enjoin an action at law brought by Ratterman against complainant for these balances, upon the ground that certain errors, three in number, distinctly pointed out in the bill, had occurred in the partnership settlements, which, if corrected, would throw the balance in favor of complainant and against his copartners. To this bill Wallman was also made a defendant, but it appears from Wallman's deposition that he and complainant had settled upon the basis of the partnership settlements mentioned, and no relief is sought as against him. Ratterman answered, denying the existence of the errors charged. My predecessor ordered a partnership account, and, neither complainant nor defendant objecting, authorized either party to show errors in the settlements. The evidence of the parties was taken, the

testimony of Wallman, the book-keeper, and a disinterested witness, being full and satisfactory. From the evidence it clearly appears that complainant was mistaken in supposing that the errors mentioned in his bill had occurred. He was simply mistaken, and there the litigation should have ended. The learned counsel of the complainant considered, however, that he was entitled, in the interest of his client, to insist upon the existence of certain other supposed errors, not mentioned in the bill at all, one of which was a failure to allow complainant interest upon the excess of his stock in the business during the first year of the partnership, and the supposed failure of the defendant Ratterman to charge himself with groceries and money withdrawn from the business in 1854–5, as shown by his (Ratterman's) own private book, to the amount of $477.98. The evidence disclosed the fact that Buddeke, who had been in the business before the formation of the partnership, turned over to it his entire stock, amounting to between $13,000 and $14,000, but was allowed, out of the sales of the first year, all the money coming to his hands, as cashier, to reimburse himself for the excess of goods turned over, leaving the stock on hand, at the end of the year, to be owned equally by the parties, as agreed upon, except a small balance due to him of $300, about which there is no dispute.

The evidence is that the settlement at the end of the first year was made by the parties, in which complainant was charged with gross receipts and allowed credit for the excess of his stock, which was all he claimed, and that the settlement was entirely satisfactory to him, and acquiesced in, the business being carried on afterwards, and annual settlements made on this basis, for six years, without complaint on his part. It further appeared that he settled with Wallman upon this basis, and set up no complaint at all in his bill touching the first settlement. The testimony leaves not a particle of doubt that this supposed error is an afterthought of the complainant's very learned and able counsel,

not of himself. The master considered it as without foundation, and in this conclusion I fully concur.

The other supposed error, the testimony of Wallman shows, is a mistake of fact on the part of the same learned counsel. He distinctly proves that at the annual settlement in March or April, 1866, Ratterman reported the amount taken by him, as shown by his private book, at $478, being 2 cents in excess of the actual amount, and that he, Wallman, as book-keeper, charged him with this amount on the books of the firm, designating the page of the partnership books on which the charge appears.

These parties, Buddeke, Ratterman, and Wallman, are, it seems, nearly related—probably brothers-in-law—and conducted their business in mutual confidence of the good faith of each to the other. Wallman and complainant continued to carry on the same business together, and may yet be partners. The evidence, I think, conclusively shows that they are all honest men, and did act with mutual good faith. The defendant Ratterman showed his confidence, not only in his own integrity, but in the integrity of his colleagues, by consenting to the opening of the partnership accounts for all purposes, when he might not only have insisted upon the complainant being confined to the errors suggested in the bill, but upon the bar of the settlements made each year.

There is not a particle of testimony to impugn the honesty and integrity of any of the parties. The complainant, as the debtor, may have allowed his feelings to find vent in some hasty assertions not justified by the facts. But the court can dismiss them all with the assurance that the record discloses nothing to the prejudice of the character of any of them.

At the hearing, the counsel for the complainant produced in court the partnership books, and sought to read portions of them to the court, to which the defendant Ratterman's counsel interposed no objection. But I suggested to the

learned counsel that the court could not be expected to look into or investigate the books of a mercantile firm running through a series of years, nor to examine them as an expert, and I declined to do so unless some ground should first be laid to show the necessity. Partnership books, to which each partner has had access, are, undoubtedly, *prima facie* evidence for and against each. *Taylor* v. *Boyd,* 6 Heisk. 613 ; *Smith* v. *Chardos,* Barn. 416 ; *Heartt* v. *Corning,* 3 Paige, 572 ; *Caldwell* v. *Seiber,* 7 Paige, 507 ; *Fletcher* v. *Pollard,* 4 Hen. & M. 549 ; *Lodge* v. *Prichard,* 3 De G. M. & G. 906 ; *Ringgold* v. *Jones,* 1 Bland, 91. Either partner has, therefore, a clear right to the benefit of these books as evidence. *Hicks* v. *Chadwell,* 1 Tenn. Ch. 251. But it does not follow that either may, on the hearing of a cause, throw down these books, consisting often of immense folios, and ask the court to grope through them. *Norwood* v. *Norwood,* 2 Bland, 481, in note. Nor can the master be required, upon a reference, to examine the books in detail. *Turner* v. *Hughes,* 1 Busb. Eq. 116. The proper mode of using them is to have them examined by experts, to ascertain balances, and to extract from them, in the form of exhibits or schedules, such items or facts as may be in dispute, or tend to elucidate contested matters of charge or discharge. To make the books themselves exhibits is an idle form, except to identify them. They were evidence before they were exhibits. If the witnesses who are examined as to the contents of the books agree in their statements, it is unnecessary to look beyond the depositions. If the witness undertake to misstate their contents, he may be contradicted by other witnesses, or by the books themselves, if his attention be first directed to the supposed discrepancy. Any other course would tend to confusion, uselessly encumber the record, and do no good. In this case there is nothing to show that the witnesses have not stated the contents of the partnership books correctly. No foundation has been laid for referring to any part of the partnership books for any specific purpose.

To look to them might confuse, but would certainly not enlighten.

Although these conclusions are, in my opinion, sound, and sustained both by reason and authority, I am not so sure that I did not err, in this particular case, in refusing to allow the counsel of the complainant to read such parts of the partnership books as he asked to be permitted to read. In the first place, no objection was made by the opposing counsel, and, consequently, it was not for the court to interfere with his management of his client's cause. It may be that, on appeal, the appellate court might find error in this specific ruling, in which event the costs of an appeal would have been occasioned by this court, not by him. Nothing is clearer than that the court ought not to interfere, as a general rule, with the conduct of a cause, unless objection is made by the other side, and the question must be determined by the judge. In the second place, the learned counsel for the complainant, being of opinion that the law is otherwise than as held by the court, may have shaped his evidence to meet his own views of his client's interests. He may not, therefore, have felt it necessary to take the course suggested in the preceding part of this opinion, believing that he had the right to refer to particular parts of the books in connection with the evidence. The ruling in question, in this view, would operate as a surprise, and prejudice his client, without fault on his part.

Under these circumstances I feel it my duty, without any application from the complainant, to grant him a rehearing of the cause, so as to enable him to have the benefit of such part of the partnership books as he desired to present at the hearing, and was prevented from presenting by the action of the court. To this end, the order granting an appeal to the supreme court, if entered, will be set aside, and the cause reheard at such early day as may suit the convenience of the complainant's counsel.

NOTE.—The counsel having, upon further examination, become satisfied that the supposed errors relied on by him did not exist, waived a further hearing, and the litigation ended.