Mr. Justice Walker delivered the opinion of the Court. In this case, one partner files his bill against his co-partner, who was entrusted with the care and sale of the goods, for an account and settlement. As a preliminary question, it becomes important to ascertain distinctly the grounds of equity presented in the bill, in order to determine how far the defendant’s answer will be received as evidence; for it is mainly upon the conclusiveness of the answer as evidence that the defendant relies for a successful defence. The existence of the partnership and the terms upon which it was entered into, are not contested; nor is there much difficulty in ascertaining the amount of the capital advanced by the respective parties, or the quantity of goods furnished. The defendant, by the terms of the partnership, was intrusted with the exclusive management and sale of the goods, and the bill is to some extent in the nature of a bill for discovery as well as for settlement and account. So far as it partakes of a bill of discovery, the issue is a broad one, and an appeal, is made to the conscience of the defendant, not so much to answer particular facts as to disclose with regard to a chain of connecting facts which tend to a particular result. Thus considered, the answer should be taken as evidence with regard to all the several matters necessarily stated in order to arrive at such result. As, where the accounts are open, and the defendant is called upon to state in regard to the state of the accounts and the real amount due; the answer in such case would certainly be evidence as well of credits and debits, and of such balance. But in this case, it seems that at a time between the commencement of business and its final close, a settlement of accounts was had between the parties, setting forth the amount of capital advanced by the partners, and the amount of sales up to that date, in which a balance was struck in favor of complainant for a balance of capital advanced, and a promise made to pay, which settlement was signed by the parties. And the question is, shall this settlement be taken as evidence of the state of the accounts at that time, or shall the answer be received as evidence to set it aside, as, for instance, when the defendant admits in his answer that he executed the articles of settlement, shall he be permitted to set up a different state of facts in his answer, and, if so, shall the answer be taken as evidence of such facts ? It will readily be perceived that, in this case, the bill does not present, in fact, a case where no account has been taken, and yet does not rely upon the settlement as the sole ground of equitable relief, for the settlement was not a final, disposition of the whole matter ; the partnership was still kept up, and the bill not only claims what then appeared due, but also an account from that time forward. The settlement, upon examination, will be found to amount to this, that, so far as the amount of capital invested and the amount received, was concerned, there was what purported to be a full accounting and a balance struck, and a promise on the part of the defendant to pay it. But so far as regards the expenses incurred in making sales, or the amount of goods sold, nothing more was ascertained than the amount of sales at that date, without having ascertained the amountexpended in making the sales or striking any balance on account of profit or loss. It was necessary, therefore, to present the whole transaction before the chancellor in order to ascertain these facts, and the defendant was called upon to state fully the facts so as to enable the chancellor to lay hold of them in connection with the ascertained and settled facts ; so that the answer and discovery of the unsettled points before the settlement and the like answer and discovery as to facts after the settlement, when taken together and in.connection with the ascertained fact, made and determined in the partial settlement, would furnish data for a full determination of equities between the partners. So much of the defendant’s answer, therefore, as is responsive to the call for an account and discovery, as well before as after the settlement, and not embraced and determined by the settlement, should be received as evidence for the defendant, but so much of it as relates to matters embraced in the settlement, should not be so considered, for the complainant certainly never intended to abandon the settlement, but, so far from this, set it up and relied upon it. Until it is impeached, or set aside, it-must therefore be held as conclusive between the parties, subject to correction where improper items have been allowed, or proper charges omitted, or miscalculations made, or if the settlement be assailed on account of the sickness and incapacity of the defendant to make it, in all such cases it devolves upon the defendant to prove that such mistake was made, or that the settlement was not valid and binding upon him, because of such sickness or incompetency on his part, the effect of which would be in the first instance to correct the account stated and settled, and leave it in force as corrected; and in the second, to set it aside and vitiate it as a settlement entirely, because of the incapacity of the party to make it at the time. Upon this point, Story, in his Com. Eq., vol. 1, 497, 523, says, “ If there has been any mistake, or omission, or accident, or fraud, or undue advantage, by which the account stated is in truth vitiated, and the balance is incorrectly stated, a court of equity will not suffer it to be conclusive upon the parties, but will allow it to be opened and re-examined. In some cases, as of gross fraud, or gross mistake, or undue advantage or imposition, made palpable to the court, it will direct the whole account to be opened, and taken de novo. In other cases, where the mistake or omission or inaccuracy or fraud or imposition is not shown to affect or stain all the items of the transaction, the court will content itself with a more moderate exercise of its authority. It will allow the account to stand, with liberty to the plaintiff to surcharge or falsify it, the effect of which is to leave the account in full force and vigor as a stated account, except so far as it can be impugned by the opposing party, who has the burthen of proof on him to establish errors and mistakes.” In the case of Taylor vs. Haylin, (2 Brown Ch. Rep.,) the master of the Rolls said, “ There is no rule in a court of equity that a party for asking may have an account for moneys paid. If the party has once paid, he may have a remedy at law. It mast appear that there has been imposition in order to open the account here, otherwise every transaction might produce a chancery suit. If you had stated specific errors in the account, I could have sent it to the master. But a person who comes to unravel an account, must show clear grounds.” . In the case of Perkins vs. Hart, ex. of Hart, (11 Wheat. 237,) it was held, “ That settled accounts at law or in equity may be impeached by proof of fraud or omission or mistake, and if it be confined to particular items of account, concludes nothing as to the other items not stated in it.” 4 Cranch’s Rep. 306, and 7 Cranch 143, are also authorities in point. And in a recently decided case, (Scott, White & Co. vs. Henry & Cunningham,) the subject of the extent to which the answer of the defendant would be received to impeach the validity of the written contract after admitting its execution, was discussed, and the rule there laid down, so far as it is applicable to the particular state of case before us, will be taken as conclusive. And from these authorities^ we feel warranted in saying that, the settlement made between the complainant and defendant should be held as conclusive evidence of the fact therein stated, unless successfully attacked and overturned, in part or in whole, for some one of the grounds enumerated, or of a like nature : and that for the purpose of setting such settlement aside (admitting its execution) the answer is not evidence, but it devolves upon the defendant to point out and establish, by competent evidence, clearly and satisfactorily, how or in what the fraud, mistake or omission consists, and if for a cause only reaching particular parts of the settlement, then only as to the particular mistake or omission. And that as regards all the other allegations of said bill properly appertaining to a discovery and account, unless when new and independent matter is set up by the answer, that the same should be received as evidence for the defendant,- subject to be met and overcome by other competent evidence on- the part of the' complainant. But it is insisted by the defendant that he was specially interrogated upon several points, which though affirmative matter, in regard to which his answer would not otherwise have been evidence, yet as he was required to answer them, his answer should be taken as evidence as well for as against him. It is true that if he was compelled to answer the interrogatory, and if the answer when made would be evidence as well against as for him; then, if for him, he should be permitted to use it as such. To illustrate this point more clearly, we will take one of the items excepted to in the master’s report, claimed to have been established by the answer. The bill charged a settlement in which the defendant was credited by certain sterling bills paid to the complainant. Nothing is said about a premium on these bills in the charging-part of the bill, nor could the item of premium in any wise aid the equities claimed. No intimation is made that they were omitted in the settlement; but the settlement is set up and relied upon as valid in this respect, and as the ground of the complainant’s equity. There is, however, an interrogatory propounded to the defendant in regard to premiums, and if any, how much. To this interrogatory, the defendant says, in his answer, that there were $550 due him for premiums on said sterling bills, which were not embraced in the settlement. Now it is evident that the answer to this interrogatory, whether affirmative or negative, could in no possible state of case benefit the complainant, nor was it responsive to any charge or equity in his bill, and as it could in no event be evidence for the complainant, and could not aid his equity under the rule laid down, it could not be evidence for the defendant. The issue upon this point, under the state of the pleadings, properly stood thus. The complainant charged a settlement of accounts for capital advanced and relied upon it as a ground of equity. The defendant admitted that such settlement was made, but set up a mistake or omission to credit him by $550, premium on sterling bills. This was clearly affirmative matter, as we have seen from the authorities before cited, and the answer in setting it up presented matter in confession and avoidance, in no possible state of case responsive to the allegations made by the complainant. Story, in his work on Equity Pleadings, says, “If an admission is made in an answer, it will be of no use to the plaintiff, unless it is put in issue by the bill.” (Page 219, 264.) The interrogatory part of the bill must be founded on the matters contained in the bill. Therefore, says Story, if there is nothing in the prior part of the bill to warrant a particular interrogatory, the defendant is not compellable to answer it. (Page 33, 36.) This rule is said to be indispensable for the preservation of due form and order in pleading, and particularly to keep the answer to the matters putin issue by the bill. But to this general rule, there is an exception, that in some instances, even though the defendant might not be compelled to answer the interrogatory, yet if he choose to do so, the matter of the interrogatory is deemed to be put in issue. Giving to the defendant the full benefit of this rule, and it would only extend to the formation of the issue upon the fact so set up in his answer; but certainly it would not for that reason be the less affirmative matter, and the burthen of nroof would still rest on him who set it up. So much then of the answer as is responsive to interrogatories propounded as to facts not charged in the bill, and which cannot come in aid of the complainant’s equity, must be sustained by evidence independent of such answer. It is next contended for the defendant, that, as the complainant filed no exceptions to the report of the master until after the same was returned into the circuit court, that there was properly no question subject to exception or revision in that court, and consequently the action of the court upon such exceptions, whether -in accordance with law or not, could not be assigned as error here, or, in other words, that no exceptions could properly be taken tc the report but such as had been taken before th.e master; thus making the circuit court a court of error upon the decision of the master. That such was the practice, under the rules of practice in- the English Chancery courts, seems to be sustained by the authorities cited. And such also would se.em to be the Pifevy Yorl practice regulated by their statute, which confers upon the mas ■ter in chancery in that State the same power and authority con ferred upon masters in chancery in England, (Rev. Stat. N. Í 283;) and which also confers power on the chancellor Of thatState to make rules of practice, &c., (page 177,) and under which rules and practice it is evident that the decisions referred to were made; And the same may be said of the decisions of the courts of Massachusetts and other States referred to, whilst, upon examination, it will be found that Kentucky, Tennessee, and several other States, have under their practice pursued a different course; But, be this question settled as it may, in the English courts under the powers there conferred upon the master in chancery, which are very different from ours, (Kennedy Ex parte, 6 Eng. 601,) or' in New York and other States under their statutes and rules of practice, it is very evident that they furnish no safe guide for the' action of our courts in matters of practice. Here, wé have prescribed no rules of practice which require exception to be taken before the master, or which limit the inquiry to such as are there taken, nor does our statute, which is our chief guide in' the practice to be pursued before the master as well as in the circuit court upon the coming in of the master’s report, thus limit the inquiry of the right to except to the report.- The 78th see., Dig., ch. 28, provides “Thatthe master majq at the requestof the parties, state the accounts according to their several views as well as of his own.” The 79th section provides that “ If either party shall- except to the competency of a witness, or to the admission or exclusion of any evidence, the master, if required, shall state the particulars of the exception in his report,” and is required, with his report, to return the whole of the evidence into court. By the 82c? section, it is provided “ That the report shall stand good, except such parts as are objected to, unless it shall appear, on the face of the report, or from the evidence in the case, that it was erroneous.” By the 83¿ section, “ Exceptions may be allowed to the master’s report where he admitted incompetent testimony, or where he excluded competent testimony, or for any other cause which may be adjudged good by the court, or where it shall appear from the face of the report that injustice has been done.” • These sections give an unrestricted right to except to the master’s report, either for the admission of improper evidence, or the-exclusive of competent evidence, which are the grounds for exception before the master, and the only special grounds enumerated, or for any other cause which may be adjudged good by the court, whether the"same bo apparent upon the face of the report or from the evidence when compared with the report. They are rules of practice, and indeed the only rules of practice which we can be said to have upon the subject; for no rules of chancery practice have as yet been established with us, but if otherwise, unless there should be other rules connective with the rule contended for, which would limit its operation to cases where the court had settled the points of equity, and directed them to be sent to the master to take the proof and make up an account, the greatest confusion and difficulty would arise before the master on points of law far more perplexing and complicated than would arise in court upon the final decree, and which should alone be settled before a competent judicial tribunal. In the case before us, an order was made that the papers and testimony on file be referred to the master in chancery for a statement of accounts between the parties, and that he state the accounts in the alternative, No statement of the points at issue was made, nor was any discretion given as to the extent to which the answer should be received as evidence. Nothing was said about advances made, or accounts settled with partnership effects. In fact, the whole matter was left to the master, not only to settle and determine the application of the evidence to the points in issue, but to determine the points themselves. Certainly in the absence of some express law, or established rule of practice, the circuit court never could have intended to rule the parties to a strict contest of the points decided upon these complicated matters before the master, but must be understood as intending to reserve to itself a free and unrestrained power over the report upon its return, regardless of the particular points excepted to before the master as fully at least as is allowed by a fair and liberal construction of the statute. From this view of the practice, it follows that complainant was not limited in his exceptions in the circuit court to those taken before the master, and that we will proceed to consider the exceptions upon their merits as fully as if each of them had been first taken before the master and re-assigned and insisted upon in the circuit court. As regards the admissibility of the answer as- evidence upon the several points at issue, we need add nothing more. There was evidently error in the decision of the court in refusing to sustain the exceptions to the master’s report. Are-statement of the account must therefore be made in several particulars, which we will proceed to consider, not for the purpose of summing up the evidence and settling the balance here, nor determining how far the evidence taken together may tend to establish given points, but for the purpose of settling the points of equity involved and the legal effect and application of the evidence tó them. If the defendant, the active partner, entrusted with the care and sale of the goods, abused the trust reposed in him by appropriating the goods to his own use, or by any other act amounting to a palpable violation of the terms of the partnership agreement, without the assent of the complainant at the time or his subsequent ratification, he may be held accountable for such act in damages to his co-partners, or as in case of an appropriation or unwarrantable detention of the goods, be charged with them. It is not every trivial departure from the terms of the agreement, that would amount to such breach of trust, for it must be presumed that a reasonable discretion was intended to be given such partner under pressing or unforeseen circumstances, and where time for consultation is not allowed. (Story on Part. 342. Dexter vs. Arnold et al., 3 Mason Rep. 288. 7 Paige 483.) The appropriation of the partnership funds to the rebuilding of the house for purposes of speculation, was certainly beyond the range of partnership transactions, and unless it was sanctioned by complainant, the funds so expended would be properly chargeable to the defendant as that much appropriated to his private use. In that event, the complainant would not be entitled to share with the defendant the rents accruing for the use of the property. If, however, it should be otherwise, then the rents should be accounted for as other assets of the firm, arising out of the use and occupation of the partnership property. So far as it shall be made to appear that the defendant expended his own individual means, either in buying goods or in defraying the expenses of the partnership business, the same should be credited to him as so much capital advanced; and for all sums of money or means paid or expended out of the partnership means or effects, either in the purchase of goods or in defraying expenses, the defendant should be credited in his account for the amount of partnership effects, entrusted to him and with which he stood chargeable. The settlement made in May, 1341, will be held as conclusive evidence of the facts therein contained, and taken as a point of rest in such settlement, so far as the same extends, unless it is shown that errors were committed in making up the same ; and as we have said, the answer of the defendant will not be received as evidence of such errors or mistakes, but other affirmative proof must be produced- It is next objected by the complainant that the circuit court erred in excluding the deposition of Castling. The ground upon which the deposition was excluded, is, that he was interested in increasing the amount of the sales made at the store kept at the lower landing, the effect of which was said to increase the per cent, which he was to have received for making such sales. The rule in such case is, that “no objection can be taken to the competency of a witness upon the ground of interest, unless he was directly interested in the event of the suit, or could avail himself of the verdict in the cause so as to give it in evidence on any future occasion in support of his own interest.” (1 Phill. Ev. 55.) And the same author proceeds to say, “If the verdict can be used in evidence against the witness in case the party for whom he is called should fail in the action, or if the witness can avail himself of the verdict so as to give it in evidence against the witness in case the party for whom he is called should fail in the action, or if the witness can avail himself of the verdict so as to give it in evidence in support of his own claim, that this is a direct and immediate interest in the event of the suit which will render him incompetent.” (Id. 55.) In the case before ns, it is said that the decree in this case can be used as evidence in the suit pending in favor of the witness for wages, and therefore he is interested in increasing it. But we think this decree could not he given in evidence in that suit, because this is not a proceeding to ascertain the sum due on account of sales at that store. The sales there are but an item in a general account, and if the sales were less the goods on hand were more, so that it must depend upon the future disposition of the goods as to whether the decree even upon that item of the account would be increased or lessened by such evidence. But the truth is that the decree is inevitably to be made up of so many different items, that, whether great or small, it would be no evidence of the amount of goods sold, and out of which he was entitled to recover a per cent, for selling. This being the case, the circuit’ court erred in excluding his deposition as evidence. Upon the subject of Castling’s defalcations, which was one of the questions involved in the exceptions taken, there can be no doubt but that as he was the accredited agent of the firm, it should bear the loss occasioned by his defalcations, and in stating an account charging the defendant with the amount of goods received belonging to the firm, he should be credited by any losses incurred either by the carelessness or neglect of their agent, or by accounts made in the store by insolvent customers contrary to the directions given by the firm. Such agent or clerk would be responsible over to them for any breach of trust committed by him. As regards the charge for premium on the sterling bills, or any other money credited in the settlement, if the defendant was really entitled to credit for such sum, and it was by mistake or otherwise omitted to be given at the time of settlement, the defendant must show the fact by other evidence than his answer, as will b.e seen by what we have already said and the authorities cited. In restating the accounts, the time of making the settlement should be considered as a point of rest in the accounts. The sum of $1,090 77 was, by agreement, to be withdrawn at that period, and the defendant bound himself to pay it. The capital, upon which the business was to be carried on after that time, was changed, and from that period the whole of the profits which had then accrued, the sum of $600 of the sum found due the complainant of the original capital furnished by him, which was not to be withdrawn, and the sum of $200, which the defendant agreed to furnish on his part, were to be considered and taken as the future capital of the firm, and the re-statement from this point of rest should be made in reference to this modification of the original agreement. There are no other points at issue that it is deemed important to notice, as the several exceptions to the master’s report will, upon examination, be found to fall within the rules laid down. And as it is evident that the decree should be reversed, and that a re-statement of the whole account will necessarily be- made, we have intentionally forborne to express any opinion as to the conclusiveness or the weight of evidence for or against either of the parties. Tet the decree of the circuit court be set aside, and the cause remanded to the circuit court, with instructions to proceed to hear and determine the same according to the rules and practice in courts of equity, according to law and not inconsistent with this opinion: and that the appellant recover his costs in this court expended. Oh J. Watkins did not sit.