Bosworth, Ch. J.,
dissenting. The pleadings in this case are but six folios in length, while the Beferee’s findings of fact and conclusions of law occupy nearly nine printed pages.
The complaint states, that about the first of March, 1851, the defendant and plaintiff entered into a copartnership, under the name and style of “ James B. Taylor,”, in “ the hat and cap business, in the city of H. Y.,” and carried it on about two years, agreeing each to bear and pay half of the losses; that there were heavy losses, and that the defendant-refuses to account, or pay any part of the loss.
The referee has not found in terms, as a fact, whether there was a partnership or not. He has found a series of special facts, and his first conclusion of law is, the 'plaintiff and defendant “were copartners, and jointly and equally liable, as between themselves for ‘losses sustained in such trade and business.”
But the Beferee finds that, at the time when 0. H. and D. B. Post sold their stock of goods to the plaintiff and the defendant, it was verbally agreed between the latter two, and also between them and the Posts, “ that the said plaintiff and defendant would continue and carry on the business of manufacturing and dealing in hats and caps, * * and it was understood and verbally agreed between said plaintiff and defendant, that said trade and business should be conducted and carried on in the name of the *462 plaintiff, “ James B. Taylor,” * * “that the said trade and business were so continued, conducted and carried on in the name of the plaintiff, “James B. Taylor,” with the result stated in his report.”
In the exceptions taken to the Beferee’s report, the second one is, “ the omission to find, as matter of fact, that the arrangement was that the plaintiff should carry on the business in his own name, and at his own risk, he agreeing, in consideration of defendant’s assistance, to secure to defendant, out of the business, the amount due ■from the Posts.” In accordance with this, is the defendant’s third point on this appeal, viz.: “ that defendant’s version of the arrangement is the only probable one, namely, that if defendant would furnish credit to buy fresh stock, plaintiff would agree to carry on the business, and work out of it, the amount of the defendant’s debt against the Posts.”
It is, therefore, quite evident that neither party claimed, on the trial, that if there was a partnership, the Posts were included in it. And the defendants position, if intelligible, is that Taylor went into the business at his own risk, agreeing in substance, that the defendant should realize his debt against the Posts; this involves the idea that the defendant not only relinquished to'Taylor all control of the stock bought by the two from the Posts, but all property in it.
The evidence was such, that a finding in terms that-the plaintiff and defendant formed a partnership and agreed to carry on this business as partners, and did so carry it on, could not have been disturbed as being against evidence. The actual finding amounts in substance to the same thing. When the evidence on the question of there being a partnership was “closed,” and the plaintiff proposed to go into proof of the state of the accounts, the defendant’s counsel objected, and “ the Beferee held and “ decided that, upon the evidence, the parties were part“ners, and that the accounts must be taken.” It is not, therefore, a mere presumption that he decided, as a fact, *463 that the parties were partners, but it is stated, in terms, that he so decided. (See Grant v. Morse, 22 N. Y. R., 323.)
I have no doubt, upon the evidence, that the plaintiff' and defendant took the transfer of March 1,1851, in payment and satisfaction of the debts which the Posts owed to them.
The draft agreement (Exhibit No. 1) so declares, and that shows Yarn mu’s understanding at the time. St. John says that “Taylor & Herring were to receive the goods for their debts—that was the conversation then.” Way testifies that, “if there was a loss, it was to be borne by Taylor & Herring.”
Charles H. Post testifies thus : “I sold the goods to Herring & Taylor, for a consideration that I owed them, for the neighborhood of $11,000, which I owed part to each; * * I sold out the goods to Taylor & Herring, with the understanding that they were to give me my liabilities, to the amount of about $11,000.”
There is nothing in the evidence of Taylor or Herring tending to show that the business was to be conducted at the risk of the Posts, in any such sense that they were to share any of its losses, if any there should be, or that they were to continue liable on these debts to Taylor & ' Herring, if the latter were subjected to losses, instead of making profits.
They stipulated for the contingent benefit, if there should be profits, of having all the profits, after the debts of Taylor and Herring were realized and the expenses of the business paid, applied to pay debts owing to other creditors. If there had been such profits, those creditors could have recovered them in a suit against Taylor & Herring.
If there were any partners in continuing the business, they were Taylor & Herring only. The stock was theirs, they owned it jointly, and agreed at the time they bought it to carry on this business, and the subsequent declarations of Herring (if he made those which it is testified he made) show that he claimed to be interested in it, and to *464 be carrying it on with Taylor. The case of Cox v. Hickman, (9 Com. Bench, N. S., 47,) is an authority to the point, that the creditors of the Posts, even if they had formally assented to the arrangement, would not, thereby, have become partners. The facts in this case, that the business was a new one, was carried on in a new name by "new parties as principals, and that the Posts had no power or right to control it, and stipulated for nothing to revert or be paid to them in any event, distinguish this case from Cox v. Hickman so materially, that it is not an authority in support of a suggestion that the Posts were partners in the new business.
The fact that the Referee states in his findings of fact, that the Posts, being indebted to Taylor & Herring, “ in consideration of such indebtedness, and in payment or on account of the same,” bargained, sold and delivered their goods, &c., does not appear to me to present any serious difficulty. This report does not, like the Code, contain a definition of some, or any of the words used in it. Ho one, therefore, can assert that his definition of any particular words in the report of the Referee, will express the precise idea which the latter designed to convey by them. But I think it quite clear that he did not use the words, “ on account of the same ” as synonymous with, “ as collateral security for the same.” That idea would conflict with the fact of a sale of the goods, which fact he finds. And the written instrument of transfer signed by the Posts, declares that they “ do sell ” the goods for the consideration of $11,636.73, and the transfer it makes is absolute and unconditional.
I think the Referee, if he should attempt to explain his meaning by a supplemental report, would show that he did not mean by these words anything materially different in meaning from that of the words “ in payment.” The words “on account” are frequently used to express the idea of a partial payment, and, as used here, are, as I think, designed to express the idea of satisfaction, discharge or extinguishment.
*465 When, there is nothing in the report tending'Hc^show that words were used to express an idea justifying ah inference inconsistent with that naturally arising from other facts specially found, such as the fact of an actual sale of the goods, they should not be so construed as to create an inconsistency between that and other findings of fact, when they can consistently be so construed as to harmonize with each other.
I conclude, therefore, that Taylor & Herring bought these goods, and took them in satisfaction of these debts, and that this is the just construction of the Referee’s findings of fact.
Whether the creditors of the Posts could have held this property on executions against the latter, as against Taylor & Herring, it is useless to inquire. Whether they could or would not, will not aid in determining the legal relations between Taylor and Herring on the facts found, or their liabilities inter se.
The only important question, on the facts found, is, whether the books of account kept in this business were, on an accounting between these parties, prima facie evidence in favor of each one of them against the other.
The facts are found “ that the books of account of and “ relating to the said trade and business, and the transac- “ tions thereof, were kept at the said store, Ho. 142 Water “ street, by the bookkeeper employed for that purpose, as “ above stated, in which were entered and set down the “ purchases, sales and other transactions of and in the said “ trade and business, which hooks were at all times open to “ the examination and inspection of said parties (Taylor and “ Herring) and each of them ; that while said trade was “ so conducted and carried on as aforesaid, the plaintiff “ had his office and place of business at and in said store, “Ho. 142 Water street, and the defendant had his office “ and place of business in the immediate vicinity of, and “ was frequently in said store, Ho. 142 Water street.”
That Taylor “ neither purchased nor sold goods in or for *466 account of said trade and business, nor made any entries in the books of account thereof.”
The language of the Court in Simms v. Kirtley, (1 Monr., [Ky.,] 80,) is very pertinent to the question under consideration, in a case like the present. The Court say that “ from the very nature of the case, the books of a partnership must be evidence between the partners themselves. Their situation is one of confidence. They agree to unite, and, as to others, to become one person, and the books of the firm are to speak their language and record their joint transactions, and there is an understanding that these books are to be appealed to to tell their true situation. To admit them as evidence, then, is only effectuating their agreement, and using their own criterion and test, to ascertain the truth. Such books, therefore, kept subject to the inspection of each, must be admitted as correct until.the contrary is shown.” Fletcher v. Pollard (2 Hen. & Munf., 544, 549 and 550) is to the same effect.
The question is not whether either party has neglected or omitted to inspect, but whether he has had opportunity to inspect; whether he has had access and could have inspected. The presumption is, that each partner had access, and an opportunity to inspect, until some fact is proved tending to show that a partner did not have access. United States Bank v. Binney (5 Mason, 176, 188) does not conflict with this view.
In Heartt v. Corning, (8 Paige, 572,) the Chancellor said that, “in stating the accounts of partners, as between themselves, the entries on the partnership books, to which both partners have had access at the time when those entries were made, or immediately afterwards, are to be taken as prima facie evidence of the correctness of those entries.”
In Caldwell v. Leiber, (7 Paige, 507,) the Chancellor says that, “ entries in the copartnership books, made during the continuance of the partnership, are, as a general rule, evidence for and against the different members of the firm, in a subsequent adjustment of their accounts between *467 themselves. And it lies upon the party alleging a fraud •or mistake in such entries to prove it.”
In Lodge v. Prichard, (27 Eng. L. and Eq., 474,) Turner, L. J., said, “ I am aware that some doubt has been felt in the master’s offices whether entries in partnership books are evidence against all the parties, but I am not aware that any such doubt has been expressed by the Court.”
Kniuht Bruce, L. J., said, “Prima facie, the books of the partnership are evidence among all the partners, for them all and against them all, owing to the agency which pervaded all the partnership transactions. * * * The only question is, whether the books are prima facie evidence between the partners and their estates. In my opinion, they are.”
In Stoughton v. Lynch, (2 Johns. Ch., 217 and 218,) the Chancellor says, “I presume, and cannot but deem it proper, that in stating accounts between copartners, the true dates, as furnished Iny the hoolcs themselves,^ought to he assumed.’’'1 The point under the consideration of the Chancellor was, whether the defendant should be charged with various sums of money, at the times when he was debited with them in the books, or at anterior dates. And he held that the books must be taken as prima facie evidence on that point.
Entries made by one of the partners, during the partnership, in a book of account, are admissible evidence against both. (Walden v. Sherburne, 15 Johns., 409.)
An account of sales, rendered by a common , agent of both parties to one of them, has been held to be admissible as evidence against the other, of the facts stated in it. (Peltier v. Sewall, 12 Wend., 386.)
It seems to me quite clear that, as the general rule, the entries in partnership books of account, made during the partnership, are prima facie evidence for all, and against all the partners, on an accounting between them.
That where the books are equally open to the inspection of both partners, the mere fact that one may omit to examine them does not affect the application of the rule.
*468 And that every consideration calls for the application of the rule in a case where no entry is made in the books by either partner, but all of them are made by a bookkeeper employed for the purpose, as the common agent of both.
I have examined all the cases cited, and several others, and do not find one where the books were not held to be grima facie evidence against a partner haying access to them and an opportunity to inspect them, merely because he omitted to do so.
The judgment should be affirmed.