GEORGE SHAVER, Appellant, *v.* THE WESTERN UNION TELE-GRAPH COMPANY, Respondent.

Defendant's president wrote a letter stating, in substance, that if B., a person in its employ, would make an order on its treasurer for any portion of his salary, and the person in whose favor the order was drawn should file it with the treasurer, the sum named would be paid monthly so long as B. remained in the employ of the company and the order "remained unrevoked." Thereupon B. drew an order directing the treasurer to pay N. $300 in monthly payments of fifty dollars, and charge the same to his salary account The order and letter for a valuable consideration were delivered to N., who presented the same to the defendant's treasurer, and by his direction filed them with the cashier. B. subsequently wrote the treasurer stating that, "if not accepted," he countermanded the order. He remained in the employ of defendant six months thereafter at a salary of $118 per month. Defendant refused to pay anything under the order. In an action to recover the amount thereby directed to be paid, *held* (DWIGHT, C., dissenting), that plaintiff could not recover; that treating the order as a bill of exchange the letter was not equivalent to an actual acceptance as it was conditional (1 R. S., 768, § 8); that the transaction did not operate as an equitable assignment, as the order was not a requirement to pay out of a designated fund or from a particular source; and that, as the promise to pay was upon the condition that the order remained unrevoked, thus leaving it subject to the control of B., his subsequent letter was a revocation and rendered the conditional acceptance inoperative.

(Argued January 16, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of defendant entered on the report of a referee.

This was a consolidated action embracing three suits brought to recover installments alleged to be due upon an order accepted by defendant.

In February, 1868, one J. A. Borst was an employe of the defendant at a monthly salary of $118, payable at the end of each month, and the defendant caused to be delivered to W. W. Borst, a brother of the said J. A. Borst, the following reply to a note previously received from him, viz.:

" Mr. W. W. BORST:

" Dear Sir. — Replying to your note of this date I have to say that if your brother makes an order on O. H. Palmer, treasurer of this company, for any portion of his salary, and the person to whose favor the order is made will file it with Judge Palmer, whatever sum is named therein will be paid monthly to the party in whose favor it is drawn, so long as your brother continues in our service and the order remains unrevoked.

" Very respectfully,

" WILLIAM ORTON,

" <i>President.</i>"

On February 27, 1868, W. W. Borst exhibited this letter to J. A. Borst, who, thereupon, drew and delivered to said W. W. Borst the following order:

" O. H. PALMER, Esq.,

" Treasurer Western Union Telegraph Co.:

" Please pay to Mr. D. L. Noyes fifty dollars, monthly, on the last day of each and every month, commencing March 31, 1868, until the sum of three hundred dollars is paid, and charge the same to my salary account.

" J. A. BORST.

" NEW YORK, <i>February</i> 27, 1868."

The same day W. W. Borst took this order and defendant's letter to one D. L. Noyes and delivered them both to said Noyes, receiving from him a valuable consideration therefor. Noyes, on the same day, took said order and letter to the office of the defendant and notified defendant that he held the same, and delivered to and left them with John Horner, its cashier, by direction of Palmer, its treasurer.

On the thirtieth day of March, the day before the first payment became due by the terms of the order, J. A. Borst sent to defendant the following notice:

"NEW YORK, *March* 30, 1868.

"DEAR SIR. — If not accepted I hereby countermand the order given to D. L. Noyes. Please return to him, unpaid.

"Respectfully yours,

"J. A. BORST.

"Hon. O. H. PALMER,

"Treasurer Western Union Telegraph Co."

J. A. Borst continued in the employment of the defendant during the months of March, April, May, June, July and August, 1868, at the said salary, and there was due and payable to him, at the end of each of said months, the sum of $118 on account thereof.

Noyes demanded payment from the defendant of the sum of fifty dollars that became payable on the last day of March, 1868, but it was refused. He then, on the 24th day of April, 1868, sold, and by an instrument in writing assigned and transferred to the plaintiff all his right, title and interest in the said order, and all rights acquired thereby, and all claims he then had against the defendant, and the plaintiff thereafter demanded payment of the other sums of fifty dollars that were payable under the said order of the defendant, but it refused to pay any or either of them and paid all of them to Borst.

Upon the facts above set forth the referee found, as a conclusion of law, that the plaintiff was not entitled to recover,

and directed judgment to be entered for the defendant. Judgment was entered accordingly.

*Nathaniel C. Moak* for the appellant.  Defendant having notice of the assignment of the order and letter was bound to pay without any written acceptance, provided Borst continued in its employment.  (*Shuttleworth* v. *Bruce*, 7 Rob., 161–163; *Hall* v. *City of Buffalo*, 1 Keyes, 193; *Lewis* v. *Berry*, 64 Barb., 593, 597, 598; *Field* v. *Mayor, etc., of N. Y.*, 6 N. Y., 179; *Parker* v. *City of Syracuse*, 31 id., 376; *Lowry* v. *Steward*, 25 id., 239; S. C., 3 Bosw., 505; *Richardson* v. *Carpenter*, 46 N. Y., 660; *Morton* v. *Naylor*, 1 Hill, 583; *Yeates* v. *Graves*, 1 Ves., Jr., 281; *Lett* v. *Morris*, 4 Sim., 607; *Ex parte Alderson*, 1 Madd., 53; *Hutter* v. *Ellwanger*, 4 Lans., 12, 13.)  Borst having received value for the order had no power to revoke it, and such revocation did not protect defendant.  (*Morton* v. *Naylor*, 1 Hill, 583; *Field* v. *Mayor, etc.*, 6 N. Y., 179; *Hall* v. *City of Buffalo*, 1 Keyes, 193; *Houghtaling* v. *Marvin*, 7 Barb., 412; *Canfield* v. *Monger*, 12 J. R., 446; *Hunt* v. *Rousmaniere*, 8 Wheat., 174; 1 Story's Eq. Jur., §§ 169, 170, 1043, 1044, 1047.)

*G. P. Lowery* for the respondent.  The instrument drawn by Borst was a bill of exchange.  (Chitty on Bills, 55; *Cook* v. *Satterlee*, 6 Cow., 108; *Marine Bk.* v. *Jauncey*, 3 Sandf., 260; *Kelly* v. *Mayor*, 4 Hill, 263; Edwds. on Bills, 144; *McLeod* v. *Snee*, 2 Strange, 762; *Hoyt* v. *Lynch*, 3 Sandf., 328; *Pope* v. *Luff*, 5 Hill, 413; affirmed, 7 id., 577.)  Defendant could not be charged upon the instrument without proof that it accepted it in writing.  (2 R. S., 768, §§ 6, 8; *N. Y. and V. Bk.* v. *Gibson*, 5 Duer, 574, 584.)  The instrument being a bill of exchange could not operate as an assignment either in law or equity.  (*Marine Bk.* v. *Jauncey*, 3 Sandf., 260; *Cowperthwaite* v. *Sheffield*, 3 N. Y., 243; *Winter* v. *Drury*, 1 Seld., 530; *Watson* v. *Duke of Wellington*, 1 R. & M., 602; *Burn* v. *Carvalho*, 4 M. & C., 702; *Phillips* v.

*Stagg,* 2 Edw. Ch., 108 ; *Lowrey* v. *Steward,* 25 N. Y., 239 ; *Parks* v. *Syracuse,* 31 id., 376 ; *Hall* v. *City of Buffalo,* 1 Keyes, 193 ; *Shuttleworth* v. *Bruce,* 7 Robt., 161.) An equitable assignment must transfer some specific thing absolutely and unconditionally, and must remove the thing assigned from all control of the assignor. (2 H. & W. Lead. Cas. in Eq.) The action cannot be maintained, because there was no valuable consideration for the draft as between Noyes and J. A. Borst. (2 Lead. Cas. in Eq., 233 ; *Prescott* v. *Hill,* 17 J. R., 293 ; *Wheeler* v. *Wheeler,* 9 Cow., 39.) The partial assignment of a debt not assented to by the debtor will not bind the latter to payment, either at law or in equity, without his assent. (5 Wheat., 297 ; 20 Pick., 15 ; 4 Md. Ch., 75.)

LOTT, Ch. C. There is no ground for the reversal of the judgment in this case.

The allegations of the plaintiff, in his complaint, show that he construed and claimed the order of J. A. Borst, on the defendant, to be a bill of exchange. After setting it forth, *verbatim,* he alleges that it was sold, transferred and delivered to D. L. Noyes for value; and that he, immediately thereafter, presented it to the defendant, who accepted the same in writing, on condition that said Borst continued in the employment of the defendant, and, it is then averred, that he did so continue till the commencement of this action. Assuming that construction of the order to be correct, it is clear that the referee correctly decided that the plaintiff could not recover. There was no acceptance of it shown after it was drawn, and the letter of the defendant's president, previously delivered to the brother of J. A. Borst, was subject to two conditions: one that J. A. Borst should continue in its employment; and the other, that the order should remain unrevoked. It could, consequently, not be deemed an actual acceptance within the provisions of the Revised Statutes, which require it to be *unconditional.* (See 1 R. S., 768, § 8.)

It is now, however, insisted on behalf of the plaintiff, that

" the order and letter being given to Noyes for a valuable consideration, by J. A. Borst, operated as an equitable assignment of a portion of Borst's salary; and, the defendant, having notice of said assignment, was bound to pay, accordingly, without any written acceptance, provided Borst continued in its employment." Such a construction cannot be given to the transaction. The order does not, in terms, direct the payment of the salary or wages or any part thereof to Noyes. It is a request, or at most a direction, by Borst, to pay certain specified sums of money, generally, for a certain period and on particular days, without the designation therein of any claim for a debt due or to become due to him, unless it is contained in the further direction to charge the amounts paid to his salary account. This, it is true, recognizes the fact that there was a relation between the parties at the time which entitled Borst to a credit for services rendered by him, and for which a salary was payable, but the direction would have been as proper if the sums thus to be charged were for moneys lent and advanced previous to the earning of the salary, as for a salary actually earned, and for which an indebtedness had accrued. It was not a requirement that the payment should be made out of a designated fund, or from a particular source, but it was a provision made for the reimbursement of what should be paid in compliance with the request or direction. (See *Kelley* v. *The Mayor of Brooklyn*, 4 Hill, 264.)

The letter does not give any color to such a construction or claim. It is a short and clear expression of what the defendant was willing to do, as an accommodation to Borst, its employe. It is fairly to be inferred, from what is stated therein, that he wished to obtain or realize funds before he could obtain them from his salary, and that such desire was made known to the defendant. While there was a willingness on its part to accord to his wishes as far as it could with entire safety, it, by the terms of the letter, carefully avoided an absolute promise or undertaking on its part, to pay the amounts requested to the party named in the order, even if

the employment should continue and a salary or compensation should become payable therefor, and inserted, as a condition of its agreement to make the payment, that the order *remained unrevoked.* Notice was thereby given to the party who advanced money on the faith of the order, that it was not to be considered an absolute assignment of the sums that should become payable at the end of each month, but that it was taken subject to the right of Borst to revoke it. There was a clear and unequivocal declaration, on its part, that it only agreed to make the appropriation of the money at the time it should become due, *as the property of Borst,* according to his direction as manifested by an order then recognized by him, and it was entirely inconsistent with the theory that his salary should not at all times be subject to his own control and direction. The whole tenor of the letter shows that the defendant did not assume an absolute obligation to pay the moneys referred to in the order to the party receiving it, if the service of Borst should be continued, but qualified the liability assumed or promise given by the reservation of Borst's right to revoke or countermand it, and any and every person taking it took it subject to the exercise of that right.

· The question remaining to be considered is, whether there was a revocation of the order by Borst. That is to be determined by the effect of his letter of March 30, 1868, to the treasurer of the defendant, in which he wrote as follows: "Dear Sir: If not accepted, I hereby countermand the order given to D. L. Noyes. Please return to him unpaid." The acceptance there referred to by him, evidently, was intended to apply to one made *after* the delivery of the order to Noyes. He knew what was contained in the letter of the defendant's president previous to such delivery, and what the effect of it was. When, therefore, he says "if not accepted," he cannot be understood as applying these terms to what had been done before that order by him was given. They, evidently, contemplated a subsequent acceptance, and as it is not claimed that there was such ever made or given, there was no qualification

of the revocation, and it must be construed as an absolute countermand of the order. It, therefore, did not "remain unrevoked" when the portions of the salary thereby ordered to be paid became due, and by reason of that fact, the conditional acceptance became inoperative. There was, consequently, no right by Noyes or his assignee (the present plaintiff) to demand the sums sued for by the plaintiff.

It follows that the judgment appealed from must be affirmed, with costs.

Dwight, C. (dissenting). The question at issue in this cause arises upon a letter of the defendant, written by its president, authorizing an order to be drawn upon it by one of its employes, and a subsequent order drawn by the person so authorized.

In February, 1868, one J. A. Borst was in the defendant's employment, at a monthly salary, payable at the end of each month, of $118. On the twenty-sixth day of that month his brother, W. W. Borst, having previously written a letter to the defendant, received the following reply: "Replying to your note of this date, I have to say, that if your brother" (meaning J. A. Borst) "makes an order on O. H. Palmer, treasurer of the company, for any portion of his salary, and the person in whose favor the order is made will file it with Judge Palmer, whatever sum is named therein will be paid monthly to the party in whose favor it is drawn, so long as your brother continues in our service, and the order remains unrevoked. Very respectfully, William Orton, president."

On the twenty-seventh day of February, next, W. W. Borst exhibited the letter to J. A. Borst, who thereupon drew and delivered to W. W. Borst the following order:

"O. H. Palmer, Esq., treasurer Western Union Telegraph Co.: Please pay to Mr. D. L. Noyes, fifty dollars, monthly, on the last day of each and every month, commencing March 31, 1868, until the sum of $300 is paid, and *charge the same to my salary account.*           J. A. Borst.

"New York, *February 27th,* 1868."

The same day, W. W. Borst took this order and the letter of the defendant to one D. L. Noyes and delivered them to him, receiving at the same time a valuable consideration therefor. Noyes, on the same day, took the order and letter to the office of the defendants, with notice that he held the order, and left the papers with Horner, the defendant's cashier, by General Palmer's direction.

On March thirtieth, the day before the first payment became due by the terms of the order, J. A. Borst sent to the defendant the subjoined notice:

"Dear Sir: *If not accepted*, I hereby countermand the order given to D. L. Noyes.    Please return to him unpaid."

"Respectfully, yours,                    J. A. BORST.
"Hon. O. H. PALMER, treasurer, etc."

J. A. Borst continued to be in the employment of the defendant during the months succeeding February, 1868, and there was due to him at the end of each month $118.

After the notice of March thirtieth, the defendant refused to pay anything upon the order of February twenty-seventh.

Noyes assigned his claim to the plaintiff on April twenty-eighth, who commenced this action for the first fifty dollars due on the order of February twenty-seventh.

On this state of facts the question is, whether these papers, taken together, amount to an obligation binding upon the defendant.

The question may first be considered on the supposition that the order of February twenty-seventh is a bill of exchange. On that hypothesis the letter of President Orton may properly be regarded as a conditional promise to accept the bill when it shall be drawn. The doctrine of conditional promises to accept bills is now well settled. The condition may be any lawful act which the party making the acceptance may see fit to impose. If the condition is complied with, a contract is entered into, which may be enforced by a holder who acts on the faith of the acceptance. (*Mason* v. *Hunt*, 1 Doug., 296; *Browne* v. *Coit*, 1 McCord, 408; *Sproat* v. *Matthews*, 1 T. R.,

182; *Smith* v. *Vertue*, 9 C. B. [N. S.], 214; *Murdock* v.
*Mills*, 11 Metc., 5; *Banbury* v. *Lisset*, 2 Strange, 1211; 1
Parsons on Notes and Bills, 300–312; Chitty on Bills, 302,
303.)   On the other hand, if the condition is not performed
the acceptance is void.   In *Mason* v. *Hunt* (*supra*) A., before
the bill was drawn, wrote a letter to his partner, B., that he
(A.) had agreed that in case certain owners of tobacco would
give B. orders for insurance and sundry bills of lading of
goods consigned to him, that bills of exchange for the value
of the goods would· be accepted and paid by himself (A.).
The owners of· the tobacco having been made aware of this
acted upon it.   The court held it to be a valid, conditional
acceptance, and that the owners of the tobacco took it sub-
ject to the conditions — such as insurance, bills of lading,
consignment, etc.   ·Under this doctrine, a person may accept
to pay out of a fund which he shall hereafter receive.   Thus,
in *Rowe* v. *Young* (2 Bligh, 409), the lord chancellor said :
" A man may accept to pay out of the produce of a cargo
consigned to him, when that cargo shall arrive in England."
This statement is very near to the present case, since the
promise to pay is out of a fund hereafter to be in the posses-
sion of the defendant, viz., his salary, when earned.   In
*Julian* v. *Shobrooke* (2 Wilson, 9) the promise was to pay
when in cash for the cargo of a ship.   This case is quite
analogous to the present.   (1 Parsons on Bills, 300–310.)

It is not material that the order of J. A. Borst was not in
existence when the letter of Orton was delivered to W. W.
Borst.   A promise to accept before a bill is drawn is valid in
the hands of one who, acting upon it, takes the bill, when
drawn, for a valuable consideration.   (*Greele* v. *Parker*, 5
Wend., 414; *Bank of Michigan* v. *Ely*, 17 id., 508; 1
Parsons on Bills, 293, 294, and cases cited; *Goodrich* v.
*Gordon*, 15 Johns., 6.)

It makes no difference that the letter of Orton was writ-
ten to W. W. Borst.   It was plainly intended by the defend-
ant that it should inure to the benefit of any one who should
act upon it.   The language is very broad ;. he promises to·

pay "*the person in whose favor it is made.*" This phrase includes the plaintiff's assignor. In *Mason* v. *Hunt*, already cited, it will be observed that the letter was written to the brother of the writer, and it was still held to be a conditional acceptance in favor of those to whom it was exhibited. Moreover, in this State, such a promise would fall within the class of cases holding that a promise made to one for the benefit of another is available to the person in whose favor the promise is made. (*Barker* v. *Bucklin*, 2 Denio, 45 ; *Burr* v. *Beers*, 24 N. Y., 178 ; *Van Schaick* v. *Third Avenue Railroad*, 38 id., 346.) The present case is clearer than the cases there decided, since the consideration here moved from the person to be benefited by the promise.

It cannot be said that the order of J. A. Borst, on which the plaintiff's assignee acted, did not correspond with Orton's letter. It is true, it was not strictly drawn for a " portion of his salary," but it was drawn generally, with a direction to charge to salary account. Any deviation from the authorization must be regarded as waived by the act of Palmer, the treasurer, in directing Horner, the cashier, to receive and file the order, as drawn by J. A. Borst. If this reasoning is correct, the plaintiff complied with the conditions necessary to his recovery. The employe, J. A. Borst, continued in the service of the defendant, so as to comply with the order. He remained six months, so that Noyes became entitled to $300. The order was not revoked. The word " revoked " must mean legally revoked. J. A. Borst, as between himself and Noyes, was estopped from asserting that the order drawn by him did not correspond with the defendant's letter. He exhibited both to Noyes as an inducement to advance the money, and cannot, after all the parties have acted upon it, maintain that the instrument did not have the effect which it was intended that it should have.

A binding contract thus sprung up between the defendant and Noyes, which was irrevocable by the drawer of the order, and subject to only one condition, viz., that Borst should continue in the defendant's service. This condition having

been complied with, the defendant is liable to the plaintiff, as Noyes' assignee.

Thus far the case has been considered on the assumption that the order of February twenty-seventh was a bill of exchange, without establishing it. The cases show that it was a bill. The words "charge the same to my salary account," added to an instrument complete without them, and which would otherwise be a bill of exchange, do not change its character. (*Kelley* v. *Mayor*, 4 Hill, 263 ; *Macleed* v. *Snee*, 2 Strange, 762 ; *Hoyt* v. *Lynch*, 2 Sandf., 328.) It cannot, of course, be contended that the instrument is a negotiable bill of exchange, as it is not payable to order or to bearer ; still, it is a bill of which acceptance may be affirmed ; and an acceptor's liability is in no respect different, as between him and Noyes, than it would have been had negotiable words been employed. (Story on Bills, § 60 ; 3 Kent's Com., 77.) If, however, this is not a bill of exchange, but a mere order, the result is the same. To an order the doctrine of conditional acceptance is equally applicable. Had this been an order in precise accordance with Mr. Orton's letter — for a portion of Borst's salary — his prior promise to pay would have been a conditional promise to accept the order when drawn. This promise would have made the defendant liable *at law ;* while such an order, without the promise of the defendant, might have amounted to an equitable assignment. This distinction is clearly set forth by Lord ELDON in *Ex parte South* (3 Swans., 392–394) ; he says : "It has been decided in bankruptcy, that if a creditor gives an order on his debtor to pay a sum in discharge of his debt and that order is shown to the debtor, it binds him. On the other hand, this doctrine has been brought into doubt by some decisions in the courts of law, who require that the party receiving the order should in some way enter into a contract. This has been the course of their decisions, but is, certainly, not the doctrine of this court (equity). In this case the executor of the debtor, instead of returning the draft (not a bill of exchange) to the person who presented it, retains it, with a

declaration that he cannot then accept,. payable at any particular time, but that it shall be paid whenever the state of the testator's assets enable him to pay it. I am of opinion that this is not an absolute but a conditional acceptance of the order; for this document, *though not in the form of a bill of exchange*, is rather an order for the payment of money than anything else; and I think that the act of the executor is such an acknowledgment as takes this case out of the decisions of the Court of King's Bench." On this theory, assuming that the letter of J. A. Borst, construed with the letter of Mr. Orton, amounts to a mere order, the two papers taken together, and connected with Noyes' advances, cause a contract to spring up between him and the defendant, in which there is a conditional element — the continuance of Borst in the defendant's service — and that having been performed, Noyes would recover on the same principle as on the supposition that Borst's order constituted a bill of exchange. Noyes, as in that case, becomes " the person in whose favor the order is made," and recovers in the same way, under the rule in *Barker* v. *Bucklin* (*supra*).

It only remains to consider the effect, in equity, of Borst's order, without the aid of Orton's letter. In that case, it is entirely clear that no recovery can be had at law, as there is no promise by the defendant. The transaction, however, may amount to an equitable assignment under Lord ELDON's distinction in *Ex parte South* (*supra*). It may be conceded that this would not have been the case had Borst's order contained negotiable words. It would then have been such a bill as requires acceptance in order that any action may be maintained against a drawee. (Cases already cited.) But where the instrument is *non*-negotiable, the reasons are quite different. In this case few of the inconveniences will occur which may be reasonably claimed to attend an uncertainty whether a commercial instrument shall be regarded as a bill of exchange, requiring acceptance, or an equitable assignment needing no acceptance. Non-negotiable paper does not enter into commerce; and it is well known to be subject to the equities

between the original parties.   There appears to be no solid objection to carrying into effect what may reasonably be presumed to have been the intent of the parties.   Parsons, in his work on Bills and Notes, after maintaining that a negotiable instrument cannot properly be regarded as constituting an equitable assignment as against the drawee, adds : " Where the draft is *not* negotiable and drawn for a part of the fund, the cases are somewhat conflicting.   Perhaps the weight of authority favors the rule that the assent of the drawer is necessary ; but there are cases that appear to hold that it operates as an assignment of the particular fund from the time the drawee receives notice." The guarded form of expression here applies to the rule in the courts of law, for he proceeds: " In courts of equity, where the doctrine of equitable assignments was first laid down, such drafts have been held to be an assignment, even against the will of the drawee." (Pp. 334–336.)   This doctrine seems quite clear, where the whole debt is drawn for (*Ex parte South, supra*) ; while a careful examination of the authorities leaves the matter open to much doubt, where an instrument in the form of a non-negotiable bill of exchange, and not purporting to be drawn on a particular fund, is drawn for less than the amount of the debt.   The reason for the doubt is, that a contrary view would expose the debtor to a multiplicity of actions, and that an entire claim cannot be assigned in part without the debtor's consent.   (*Mandeville* v. *Welch*, 5 Wheaton, 282.)   This argument is not available in this State, as our cases hold that there may be a partial assignment by apt words.   (*Pattison* v. *Hull*, 9 Cow., 747, and cases collated by Mr. Hill in his note to *Morton* v. *Naylor*, 1 Hill, 583; where the New York cases are distinguished from *Mandeville* v. *Welch;* see, also, *Field* v. *Mayor*, 2 Seld., 179.)   Following these cases, I am prepared to hold that a non-negotiable order for a part of a debt will, in this State, operate as a valid assignment in equity.   On either ground discussed in this opinion, the plaintiff is entitled to recover.

The fact that the debt was not due when the order of Feb-

ruary twenty-seventh was drawn, is immaterial; it will be an assignment of the money to become due. It is enough that there is an existing contract, out of which the debt may arise. (*Crocker* v. *Whitney*, 10 Mass., 319; *Cutts* v. *Perkins*, 12 id., 211; *Clarke* v. *Adair*, cited by BULLER, J., in *Master* v. *Miller*, 4 Term, 343.) In the case of *Clarke* v. *Adair*, Dubray, an officer in the army, drew a bill on an agent of a regiment, payable out of the first money that should become due to him on an account. This was held to be a good assignment of money thereafter to become due.

On these grounds, the judgment of the court below should be reversed and a new trial ordered.

All concur with LOTT, Ch. C., for affirmance, except DWIGHT, C., dissenting, and GRAY, C., not voting.

Judgment affirmed.