## BANK OF BRITISH NORTH AMERICA .v. DELAFIELD.

*(Supreme Court, General Term, First Department.*    December 29, 1890.)

1. PARTNERSHIP—RIGHTS AND REMEDIES INTER SE—LOANS TO PARTNERS.
    D., a member of a firm, applied to C., another partner, who under the articles, had control of the business of the firm, for permission to draw from its funds at the branch office managed by D. a sum of money required by him. C. refused, but offered to lend the money if it could be negotiated without interfering with the firm's business. D., on his withdrawal from the firm soon afterwards, drew the sum mentioned. He was at the time indebted to the firm at both its offices, and his drawing the money was a violation of the articles of partnership. *Held,* that the other partners might affirm the transaction as a loan, and, it being no part of the partnership business, they had a right of action against D. thereon, which might be the subject of assignment.

2. SAME—ORDERS—ASSIGNMENT OF CLAIMS.
    An order by the continuing members of a firm, in the firm name, for payment of the amount of such loan, drawn against the loan, operates as an assignment thereof to the payee named, on presentment to the drawee, without acceptance by him.

Appeal from circuit court, New York county.

Action by the Bank of British North America against Richard Delafield. Defendant appeals from a judgment for plaintiff, entered on trial by the court, a jury having been waived.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*De Groot, Rawson & Stafford,* (*S. F. Rawson,* of counsel,) for appellant. *John P. Kingsford,* (*Hugh L. Cole,* of counsel,) for respondent.

DANIELS, J. The action is upon, and the judgment has been recovered for, the amount of an order drawn by the firm of William T. Coleman & Co. upon the defendant. This order is in the words and figures following:

"WM. T. COLEMAN & CO.

"$25,000.              SAN FRANCISCO, April 30, 1888.

"At sight pay to the order of the Bank of British North America twenty-five thousand dollars, value received, and charge the same to account of our loan to you December 12, 1887, as per our advices this date.

"WM. T. COLEMAN & CO.

"*To Richard Delafield, Esq.,* 71 *Hudson St., N. Y.*"

It was delivered by the firm to the agent of the plaintiff, and afterwards presented for payment to the defendant at the city of New York, and payment was by him refused. To establish the right of the firm to draw the order, and of the plaintiff to maintain the action upon it, evidence was given showing that the defendant was a member of the firm of William T. Coleman & Co., up to and including the last day of December, 1887, when he withdrew from it, and the business was afterwards carried on under the same name, by the other three members, until the 7th of May, 1888, when they made a general assignment for the benefit of their creditors. The entire capital of the firm was contributed by William T. Coleman. It was formed, by written articles executed by each partner, on the 31st of December, 1883, and to continue for one year, and thereafter from year to year, unless one of the

partners should wish to withdraw, or desire a change in the terms.   Neither partner did withdraw until the time when the defendant did so, and the partnership articles, for that reason, remained binding as they had been made until the end of the year 1887.   By the sixth subdivision of the articles it was agreed that the defendant might draw not exceeding $800 per month, and if, on balancing the books for each year, a greater sum was found to his credit, then "the balance shall remain on the books and in the business of the concern as their working capital, and not to be drawn out without the consent of all the others in interest."   The defendant had charge specially of that part of the business which was carried on at the city of New York, and contemplated becoming a member of another firm at that place when, or before, he withdrew from this firm; and to embark in that business he required the sum of $25,000 to place there as his capital.   And to obtain that money he telegraphed from Chicago on the 11th of December, 1887, William T. Coleman, saying to him:

"Have arranged everything.  New partnership, but one point which prejudices its consummation.  They insist on my putting in twenty-five thousand, having fifteen thousand at my credit with you, and certainly more than ten thousand for this year.  Please telegraph immediately if I may draw this amount in New York.
[Signed]                               "RICHARD DELAFIELD."

To which the following answer was returned on the 12th day of the same month:                           "SAN F'CO, Dec. 12th, 1887.

"*Richard Delafield,* 91 *Michigan Ave., Chicago:* Will not consent any party drawing one dollar beyond necessities of living until after liabilities liquidated, but will lend you the money if you can negotiate it without interfering with our needs and regular business.   Our payables precede any other consideration.
[Signed]                               "WM. T. COLEMAN."

And after that, and on December 13, 1887, a letter was written by William T. Coleman to the defendant, recapitulating these dispatches, and in plain language declining to consent to the money being drawn from the firm; and that letter was received by the defendant before he proceeded, as he afterwards did, to draw the money.   The proposal made in the dispatch sent to the defendant to make a loan of the money, if he could negotiate it without interfering with the needs of the regular business, was at no time acted upon. But on the last day of December, 1887, and without any further correspondence with the firm, or any member of it, he drew the sum of $25,000 of the money of the firm, by a check made by himself in the name of the firm, from the bank of the National Banking Association at the city of New York. At that time there was nothing to his credit in that part of the business carried on by the firm at the city of New York.   This plainly appeared from the statement of the accounts of that business proved and produced at the trial; nor was there in the accounts of the business at the city of San Francisco, where it was principally carried on by the firm.

It was agreed by the tenth subdivision of the partnership articles that there should be had and kept true and just books of account, containing and setting forth all the transactions of the business, which books and accounts should be used in common by the copartners, and free access had to them; and it was proved by the witness McGill, whose evidence was taken at San Francisco under a commission, that such books were in fact kept there.   He was an accountant and general adjuster of the books, and had been so in the employment of the firm from January, 1885.   He testified that he was familiar with the defendant's accounts, and that there was an account with him in the ledger produced before the commissioner when his evidence was taken.   He also testified that he could produce a copy of that account as it existed on the

11th of December, 1887; and the pages of the ledger account with the defendant were then offered as evidence, as they were identified by the witness. This was objected to by his counsel, on the ground that it appeared by the testimony of the witness that they were not the statement of the account prior to this time, but were made up since the transaction in suit,—since the drawing of the draft on the defendant. The objections were overruled, and the pages received in evidence, to which the defendant's counsel excepted. A plain answer to the objections consists in the fact that it had not then appeared that the account was made up since the order had been drawn; and as a matter of fact a part of the account was antecedent to that, and in the years 1885 and 1886, and the preceding part of 1887. · That was surely admissible, and as the objections were to all the account, they were too broad, and could not for that reason be sustained. But if the objections had been pointed to so much only of the accounts as had been made up after the order had been drawn, the ground for the objections would have been removed, for it was afterwards stated by the witness that the entries were "all taken from advices received from the New York office, and made at their request." Entries were made of the defendant's proportion of the final result of the year's business, and charging a like part of the overestimate of profits; and the witness then added, "of which Mr. Delafield was duly advised." And that was sufficient to allow the book to be received, especially as it also appeared on the trial, from the testimony which the defendant gave in his own behalf, that he was in San Francisco in November, or possibly in December, when he saw Mr. Coleman concerning the separation, which afforded him an opportunity for any examination of the books he might have been inclined to make; and if he did not then become familiar with the entries, it was owing to his indisposition to examine them. Besides that the evidence related to the state of the accounts as it was on the 11th of December, 1887, and the entries affecting that had been made from the results of preceding transactions, whose accuracy was attested by this witness, so far, as they were made after the close of the year 1887. His testimony was that they could only be entered after the accounts of them were received, which would extend as far as May of the following year, and that when the entries were made they were correctly recorded. This evidence, together with the fact that part of the entries were prior to the last of the year 1887, and that they had been made from advices proceeding from the part of the business under the direct management of the defendant, made these pages legal evidence against him. Those preceding his last presence in San Francisco, which, he testified, was possibly in December, 1887, were admissible as partnership accounts kept pursuant to the articles; for such accounts are evidence against each partner having the ability to consult and acquaint himself with them. *Heartt* v. *Corning*, 3 Paige, 566, 572; *Caldwell* v. *Leiber*, 7 Paige, 483, 507; *Allen* v. *Coit*, 6 Hill, 318, 321, 322. And the direct evidence of the witness sustained the later entries. The witness was then asked what was the condition of Mr. Delafield's account after the adjustment of the business of 1887. This was objected to on the ground that it called for a conclusion and opinion on transactions occurring after the retirement of the defendant, and upon an adjustment made by the witness without his knowledge or consent. This was overruled, and the defendant excepted; and the witness answered: "I will give the figures from the book; that is, in answer to the question which is now asked. His account showed a debit of $61,634.44." This answer was not improperly received, for the witness was not asked for his conclusion or opinion, but to answer concerning a strict matter of fact, nor was his answer based upon transactions occurring after the retirement of the defendant; and as long as the account produced was shown to be correct, the fact that the adjustment was made without the knowledge or consent of the defendant was in no wise important.

Other objections were made to questions asked of this witness, which are plainly without merit, and require no consideration, as they were correctly disposed of when the answers to which they related were received.

The evidence disclosed the fact that the defendant had no credit in his accounts with the firm permitting him to draw this money from its finances. He was a debtor both in New York and San Francisco. He did produce statements setting forth large profits in the business for the years 1884, 1885, and 1886. But they were not definite, or final, as they appeared, and even if they had been, they seem to have been absorbed by changes before the defendant drew this money. This, if it was important at all, was at most a question of fact for the court as it was presented by this evidence, and that was ruled against the defendant, as it very well could be from the evidence of the accountant. The monthly installments of the defendant had all been drawn by him, and he had no valid claim remaining against the firm for anything when the check was made and paid, and consequently there was no fund in his favor from which he could draw this money for his own personal use. But without making the action dependent on this fact, which might not be sufficient to support it, there was a direct violation of the defendant's obligation created by the articles in taking this money, and so there was of Mr. Coleman's refusal to permit it to be done. These restraints were well established, and must have been known to and understood by the defendant. The request itself which he made for the money disclosed his knowledge of this disability under the articles. And as it was obtained only by a violation of those obligations, it was a wrongful appropriation of that amount of the money of the firm, which it was his duty to refund to it. The money obtained in this manner did not enter into the partnership accounts as a part of them, although entered in his New York books, for it was its property, taken by the defendant without authority, and he remained legally liable to refund it from the time he received it. In this condition of the affair the firm, as it was continued by the other members, could affirm this as a loan, or charge the defendant with the conversion of the money which he had obtained; for where money has been obtained by the wrong of the person procuring it, the parties to whom it belongs are permitted to waive the wrong, and recover it as advanced upon contract. *McGoldrick* v. *Willits,* 52 N. Y. 612, 620; *Comstock* v. *Hier,* 73 N. Y. 269, 275. And both the order and the letter to the defendant, following it on the next day, evince the intention of the members of the firm to have been to regard this draft of the money as the loan for which the defendant was to be allowed to negotiate, if that could be done, without interfering with the needs of the business. The letter, as well as the order, affirm the transaction as a loan, as the members of the firm were at liberty to regard it; and as it was in fact no part of the partnership accounts or business, they were entitled to enforce the repayment of the amount, by an action at law for money loaned or had and received to the use of the firm. And the complaint was adapted to that theory of the case; for one partner may sue another on a cause of action distinct from the partnership, not involving a consideration of the partnership accounts. *Ferguson* v. *Baker,* 116 N. Y. 257, 261, 22 N. E. Rep. 400; *Howard* v. *France,* 43 N. Y. 593, 596; *Crater* v. *Bininger,* 45 N. Y. 545. And this money created such a cause of action irrespective of the condition of his accounts with the firm, inasmuch as it was drawn in violation of the articles prohibiting the defendant from drawing anything beyond his monthly salary, and also of the refusal of William T. Coleman to permit it, who, by paragraph 4 of the articles, retained "the majority interest in the concern, and the sole and absolute control of the business in all its details." The defendant, therefore, became a debtor for this money, even if no reliance is to be placed upon the fact that his own individual accounts had at the time been overdrawn. In this respect the case differs very conspicuously from what was held in *Muller* v. *Cox,* 15 N. Y. St. Rep. 393. The

right of the firm to recover this money from the defendant was the subject of assignment, and the order drawn by it was an assignment of it, for it was drawn against the amount loaned to the defendants. In this respect this case differs from those of *Harris* v. *Dolmetch*, 12 N. Y. St. Rep. 456, and *Heuertematte* v. *Morris*, 101 N. Y. 63, 4 N. E. Rep. 1, where the instruments were bills of exchange without any qualification, while in this case it was no more than an unnegotiable order, which operated as an assignment of the demand, as it was drawn not for a part, but the whole of it. *Mandeville* v. *Welch*, 5 Wheat. 277, 286. The authorities are abundant which sustain such an instrument as an assignment, without an acceptance by the drawee, but upon its presentment to him. *Shaver* v. *Telegraph Co.*, 57 N. Y. 459; *People* v. *Comptroller*, 77 N. Y. 45, 48; *Brill* v. *Tuttle*, 81 N. Y. 454. And the intention that the instrument in suit should operate as a transfer of the demand to the plaintiff was clearly made to appear by the letter to the defendant, on the day after it was drawn, for in that letter it was said:

"Referring to our draft upon you yesterday, for $25,000, and our cashier's letter No. 328, of the same date, we wish to recite what we should have added to the letter above mentioned. Previous to the formation of your firm, and in order not to prejudice the formation of your partnership with Mr. Morgan and Mr. Kissel, and to facilitate you in every way possible, Mr. Coleman was willing to aid you to the extent mentioned in his telegram of Dec. 12th so long as it did not interfere with our needs and regular business, (our payables preceding every other consideration.) You acceded to the terms of Mr. Coleman's dispatch of Dec. 12th, and accepted this money as a loan. Now that we require the money, and as you have had ample opportunity to turn yourself and realize upon your securities, we trust that you will appreciate thoroughly and understand our position in valuing upon you as per our cashier's letter, above mentioned.          Yours, very truly,

[Signed]                                        ."WM. T. COLEMAN & CO."

And that letter was competent evidence to be received and acted upon in support of this intention. *Grain-Cleaner Co.* v. *Smith*, 110 N. Y. 83, 17 N. E. Rep. 671. There is no well-founded objection against this judgment, or the rulings made during the trial. But the controversy in the case seems to have been rightly decided, and the judgment should be affirmed.

VAN BRUNT, P. J. I concur in the last ground stated by Mr. Justice DANIELS, without expressing any opinion as to the admissibility of the accounts, which does not seem to be necessary. The money being loaned, as it undoubtedly was, the defendant was bound to show a right to retain it. It was not for the plaintiff to show that he had no such right.

BRADY, J., concurs.